(19 Misc. Rep. 135.)

## PEOPLE v. WRIGHT.

, (Supreme Court, Appellate Term, First Department. January 25, 1897.)

1. ADULTERATION—ACTION FOR PENALTY—EVIDENCE.
    Adulterated milk is not shown to have been "sold or offered or exposed for sale" (Laws 1893, c. 338, § 22) merely by evidence that it was found in a milk wagon on the street, and was intended "for delivery downtown"; there being no evidence that the delivery was to be a sale, or in pursuance of a sale.
2. SAME—PRESUMPTION FROM POSSESSION—STATUTE.
    No presumption of intent to sell adulterated milk, from the mere fact of possession of it, is created by Laws 1893, c. 338, § 7, providing that the doing of anything forbidden by section 22, which forbids the sale, or offer or exposure for sale, of adulterated milk, shall be evidence of a violation thereof, without regard to the intent of the person so doing.

Appeal from the Eighth district court.

Action by the people of the state of New York against Thomas E. Wright to recover a penalty for violation of the agricultural law. From a judgment entered on the decision of the trial justice in favor of plaintiff, defendant appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Brooke & Brooke, for appellant.
Benjamin Estes, for respondent.

BISCHOFF, J. Under a statute providing for the recovery of a penalty against any person selling or exchanging, or offering or exposing for sale or exchange, adulterated milk (Laws 1893, c. 338, § 22), the defendant has been held liable, and upon this appeal the question is presented whether the facts proven by the relator brought the case within the statute; the defendant having adduced no evidence in defense, relying upon the failure of proof sufficient to charge him. It was shown that the defendant is a milk dealer, and that, upon a wagon driven by his servant, agents of the relator found cans of milk, the contents of which proved upon examination to be impure, and within the inhibition of the statute, which prescribes the test of adulteration. The milk thus examined was taken from the defendant's wagon in the public street at about 1 o'clock in the morning, and the cans were intended, according to the defendant's driver's statement, as made to relator's agents,

"for delivery downtown." This was all the proof, and we must hold it to have been insufficient to support a recovery of the penalty in question. The statute is penal, and so to be strictly construed, although the penalty is recoverable in a civil action (23 Am. & Eng. Enc. Law, p. 378, and cases cited); and, while the construction should not be such as to defeat the object sought (U. S. v. Hartwell, 6 Wall. 395), this act, properly construed, results in the attainment of that object under circumstances not involving injustice to the persons sought to be charged. The reasonable construction of the words used works that attainment, with justice, giving full effect to the meaning of those words. To bring the case within the statute, it must be shown that the offender sold the milk, or offered or exposed it for sale. In this case we have not to do with any exchange or offer to exchange, and the principal inquiry is whether the proof shows an exposure for sale. The statute does not declare the mere possession of adulterated milk to be unlawful. It looks only to the protection of the public, which might suffer from the traffic in impure articles of food; and therefore the act does not apply unless there is some action taken, or intended to be taken, by the person charged, whereupon traffic in the adulterated article may be founded. An affirmative act, therefore, must be shown, either as a sale, or an offer to sell; and an exposure for sale is, in effect, an offer—a tacit holding out—of the goods for sale, or, in other words, an exhibition of the goods under circumstances such as would reasonably lead persons to consider them offered for sale. Thus some intent upon the part of the dealer must appear, either express, as in the case of a sale, or implied, where there is an offer predicated upon an exposure for sale, since the words employed—"sale, offer and exposure for sale"— are deprived of meaning unless an intent is imported. With this in mind, the following provision of the act is to be noticed (section 7):

"The doing of anything prohibited by this chapter shall be evidence of the violation of the provisions of this chapter relating to the thing so prohibited * * *. The intent of any person doing or omitting to do any such act is immaterial in any prosecution for a violation of the provisions of this chapter."

This provision cannot reasonably be taken as intending that the words "sale" and "exposure" for sale should be given a meaning other than their logical meaning. Where a sale or exposure for sale is shown, then there is a violation of the law, but not before, and the act of the seller is made evidence of a violation. The sale or exposure for sale implies an intent, and so proof sufficient to show a violation involves also proof of intent, founded at least upon inference from the circumstances. But, says the statute, after the violation is shown the intent becomes immaterial; and yet there must be intent, impliedly, as a constituent of the violation. Unless, then, this statute aims to render it unlawful for one merely to have adulterated milk in his possession,—which it clearly does not,—the word "intent," as used in section 7, applies to something other than the elements of the offense,—such as they are in this instance,—and does not relate to the elemental proof of the offense.

In this aspect, a rational interpretation of the word, reconcilable with the apparent intention of the legislature and with the other parts of the statute, is readily arrived at. The word evidently refers to the intention of the offender to sell adulterated milk, and any excuse founded upon mistake in the quality of the article is thereby made immaterial as matter of defense. Such a defense, in view of the difficulty of determining the quality of milk by mere inspection, would be plausible, and not readily avoided; and therefore the statute makes the intent, so far, of no importance, leaving it to the distributers of milk to see that the mistake does not occur. The possession of impure milk is, to this extent, at the dealer's own risk; and the enactment, as thus construed, appears to be a wise one, in the interests of the public. Still there must be a sale, or an exposure for sale (with the implied intent), of some milk, in order that the penalty may be incurred because of the adulteration of the article sold; and the proof in this case fails to establish the fact that the milk found to be impure by the relator's agents was either sold or offered for sale, or exposed for sale. There was no exposure for sale, since the milk was not upon the wagon for sale, but for delivery to some person or persons undisclosed. The cans were, it is true, exposed to the view of persons upon the street, and of the agents of the relator, but not for the purposes of sale, actually or by inference; the place of exposure not being, in this instance, a place recognized as a place of sale. Nor was there evidence of a sale merely because there was an intention of delivery. The intended delivery may well have been to an agent of the defendant for retention of the article pending examination or analysis, or in the course of a transaction not a sale, but a consignment to another for subsequent sale, should the milk prove fit for the market, or there may have been a gift of the milk for delivery to the donee. It may be suspected that there was a a sale, because an intended delivery, but the proof was lacking sufficient to render this defendant liable for the penalty,—the fact of the intended delivery being as consistent with an intention to comply with the law as to violate or attempt to evade it; and an inference of wrongdoing, under these circumstances, could not be accepted as proof strong enough to preponderate over the existing presumption of innocence.

Judgment reversed and new trial ordered, with costs to appellant to abide the event. All concur.