(23 Misc. Rep. 134.)

### PEOPLE v. KELLINA.

(Supreme Court, Appellate Term.    March 28, 1898.)

SALE OF ADULTERATED MILK—EVIDENCE.

In an action to recover a penalty, pursuant to section 37 of the agricultural law (Laws 1893, c. 338, amended by Laws, 1897, cc. 554, 768), it appeared that adulterated milk was found in defendant's milk wagon, driven by defendant's employé; but it did not appear that the driver was selling or delivering milk, or doing anything more than carrying it from Jersey City, where it was received from the shipper, to defendant's place of business.    There was evidence that defendant returned all the milk to the shipper.    *Held*, that it could not be presumed that defendant was engaged in an unlawful act, and that the evidence was not sufficient to warrant a recovery.

Appeal from First district court.

Action by the people of the state of New York against John Kellina to recover a penalty for selling adulterated milk.    Judgment for defendant, and plaintiff appeals.    Affirmed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

C. G. Macy, for the People.

H. W. Leonard, for respondent.

GILDERSLEEVE, J.    The action is brought to recover a penalty of $100, pursuant to section 37 of chapter 338 of the Laws of 1893, amended by chapters 554 and 768 of the Laws of 1897, known as the "Agricultural Law."    Section 22 prohibits the sale of adulterated milk; section 37 provides for the penalty; and section 26 is as follows, viz.:

"Any dealer, in any article or product, the manufacture or sale of which is prohibited by this act, who shall keep, store or display such article or product, with other merchandise or stock in his place of business, shall be deemed to have the same in his possession for sale."

The evidence shows that in the early morning of July 23, 1897, two milk inspectors boarded the defendant's milk wagon, driven by one Wilder, and took some samples of the milk, which were examined by the government experts, and found to be adulterated.    Defendant swears that none of the milk was sold by him, but that it was all returned to the farmer, one Parsons, from whom defendant got it.    His testimony is as follows:

"Q. Do you remember the milk shipped to you by Mr. G. B. Parsons, on the 23d of July last?  A. Yes, sir.  Q. Whom did you have in your employ?  A. Wilder.  Q. What was his business?  A. He was driving my wagon.  He went every morning, and got milk at Jersey City, at the Pavonia Ferry, and came over on the 23d street.  Q. You remember when he came in your place, and complained that the inspector had examined the milk?  A. He came, on the 23d, in the morning, when I got up, and delivered to me these cans of milk on the wagon, and a

bottle from the inspectors. As he had always done, those days he was with me, he put six or eight or ten bottles of the milk in a box, and had them under seal. Then, when he came and brought me that bottle, it was on the 23d. He then told me that the detectives said the milk was not good, and they examined these cans, and said five were all right, and one not all right. Q. What did you do? A. I put the milk from the bottles into the can, and put it aside, and put it on the wagon, and brought it to the depot, and got a receipt from the company that I delivered it there. Q. Did you in any way, shape, or manner use any of that milk? A. No."

The government detective, Mr. McGuire, swears that he called on the defendant, and that defendant stated to him that:

"He returned all that milk, and had the bills of the railroad to show for it. He also stated that half of that can of milk, about twenty quarts, perhaps, was put into bottles; and he said he returned that milk into the can, and had shipped it all back, and had the railroad receipt to show."

Defendant introduces in evidence a receipt of the Erie Railroad Company in the following terms, dated July 24, 1897:

"Received from J. Kalina two cans milk, returned to G. B. Parsons, Oxford, Orange Co., N. Y."

Parsons himself testifies thus:

"Q. Did you receive any milk that was shipped that day? A. I did, both cans. Q. When did you receive it? A. I sent it the same as this evening, and the next evening I got it back. Q. The following day? A. Yes, sir; the earliest I could get it. Q. After the complaint of the milk from Kellina? A. Yes, sir. The name was tied on the handle of the can on the outside. Q. That it was supposed to be adulterated? A. Yes, sir. Q. You took the milk back? A. Yes, sir."

The learned counsel for the appellant calls our attention to the case of People v. Koch, 19 Misc. Rep. 634, 44 N. Y. Supp. 387, in which case it is held by the appellate court (Daly, P. J.) that a milkman, going his rounds to daily customers, offers and exposes his milk for sale at every step of the journey, and, in case of its being detected as impure, he is not relieved from liability by the fact that he did not actually sell from the can from which the impure milk was taken, but returned it to the person from whom he bought it, in the absence of any proof that he intended to have it examined before delivery. This authority is unquestionably controlling in the case at bar, if we can find any evidence to support the conclusion that defendant's driver was engaged in delivering milk to customers at the time the impure milk was found in his wagon. The statute does not declare the mere possession of such milk unlawful, and it only applies where there is some action taken or intended to be taken by the person charged, whereupon traffic in the adulterated article may be founded. People v. Wright, 19 Misc. Rep. 135, 43 N. Y. Supp. 290. Mr. McGuire, the inspector, swears that he boarded the wagon at 3 a. m., on Thirteenth avenue and Twenty-Third street, near the ferry. "Q. Do you know what became of that milk after you left the wagon? A. No, sir. Q. You don't know where it was taken? A. No, sir." Defendant swears, as we have seen, that his driver went every morning, and got milk at Jersey City, at the Pavonia Ferry, and came over on Twenty-Third street. Defendant's place of business was 400 East Seventy-Second street. He swears that his driver, on the morning of the 23d of July, when defendant got up, came and delivered to him these cans of milk on the wagon and a bottle

from the inspectors; that, as usual, he put up 6 or 8 or 10 bottles of milk in a box, and had them under seal; that then he told defendant about the inspectors' examination; and that defendant put the milk from the bottles back into the can, and put it aside, and then sent it back, on July 24th, to Parsons, without using any of it. This would seem to indicate that the driver was taking the milk from the ferry to defendant's place of business when the inspectors boarded the wagon. It does not appear at what hour the driver got to defendant's place of business. The inspector says that, at the time of his boarding the wagon, one of the cans, the one inspected and found impure, was only half full. The only fact from which we draw any inference that the driver was engaged in delivering milk when raided is that this can was half full, and that the driver had put some milk into bottles. When and where the milk was so put into bottles does not appear. Defendant says these bottles were in a box and under seal, and that there were some 6 or 8 or 10 of them. The inspector says that defendant told him (and this is not specifically denied by defendant) that half of that can of milk, about 20 quarts, perhaps, was put into bottles, and that he returned that milk into the can, and shipped it all back to Parsons, at Oxford, Orange county.

In the Koch Case, above cited, Mr. Justice Daly uses the following language, viz.:

"It was not necessary to show actual delivery to a customer, since he [defendant] admitted that he was in the act of delivering the milk when he was stopped. The fact that he subsequently returned this particular can to the party from whom he bought it does not bear upon the question in dispute; because it is not shown that he intended to submit the milk in his wagon to any examination or test before delivery. Had it been his purpose to do so, then he could not be convicted of offering the milk for sale at the time he was stopped. It is because, had he not been stopped, the milk would have been delivered to his customers, that the offense against the law was completed, and his conviction should have followed."

It will be noticed that in the Koch Case the defendant admitted that he was in the act of delivering the milk when he was stopped. In the case at bar, on the other hand, the evidence is, as we have seen, very meager as to whether he was engaged in delivering the milk, or whether he was merely taking it from the depot to defendant's place of business. It cannot be presumed that the defendant was engaged in an unlawful act. The presumption is that his conduct would be upright and honorable, and in accordance with the law. It cannot be said that the testimony adduced points with reasonable certainty to the conclusion of guilt. The inference that the driver was on his way to the defendant's place of business, where an inspection was to be had, before offering the milk for sale, is quite as rational an hypothesis. There is no sufficient evidence to sustain a finding that the defendant's driver was delivering milk to customers at the time the impure milk was found upon the defendant's wagon. His driver had apparently just received it from the shipper. There is no evidence of collusion with the shipper, and none will be presumed.

We are of the opinion that the trial justice reached a conclusion that is fully supported by the testimony, and that the judgment appealed from should be affirmed, with costs to the respondent. All concur.