The People of the State of New York, Respondent, *v.* John Timmerman, Appellant.

| 79 | 565 |
| 81 | 131 |

*Possession alone of adulterated milk is not an offense under section 63 of the New York city Sanitary Code — power of the Legislature to authorize the enactment of that section — the section was not repealed by section 1172 of the New York charter nor is it controlled by section 22 of the Agricultural Law.*

The mere possession of adulterated milk in the city of New York is not an offense punishable under section 63 of the Sanitary Code of the board of health of the city of New York, which provides that no adulterated milk "shall be brought into, held, kept or offered for sale at any place in the city of New York, nor shall any one keep, have or offer for sale in the said city any such milk."

The Legislature had authority to confer upon such board of health power to enact section 63 of the Sanitary Code.

Such section was not repealed by section 1172 of the charter of the city of New York, nor is section 22 of the Agricultural Law alone controlling upon the subject of adulterated milk.

Appeal by the defendant, John Timmerman, from a judgment of the Court of Special Sessions of the city of New York in favor of the plaintiff, entered on the 14th day of July, 1902, convicting the defendant of a violation of section 63 of the Sanitary Code of the board of health of the department of health of the city of New York.

The complaint charged the defendant with having unlawfully kept, had and offered for sale on the 18th day of April, 1902, on a wagon at the West One Hundred and Thirtieth street milk station of the New York Central railroad, in the city of New York, adulterated milk in violation of the provisions of section 63 of the Sani-

tary Code of the department of health of New York city. A warrant being issued, the defendant was duly examined before the magistrate and pleaded not guilty, but was held on the charge and thereafter tried before the Court of Special Sessions.

The record of the testimony taken upon the trial discloses that there was no controversy or conflict as to the facts. The inspector testified that he took a sample of milk from one of the cans upon the wagon which was then being loaded by the driver with milk which had just arrived by train from the country. He was told by the driver upon inquiry that the milk came from the creamery of McDermott-Bunger Dairy Company and the wagon was marked with that name and the cans marked " M. D. B." · The inspector further stated that the driver told him he was taking the milk to the stables. A chemist testified that he analyzed the sample of milk given him by the inspector and there was an adulteration of at least five per cent of water. The inspector, recalled, testified that there were 1,600 quarts of milk on the wagon, but he would not swear that the particular can examined was sold or exposed for sale. Thereupon the People rested.

The defendant testified that he was driver of the wagon and that after the inspector opened one of the sealed cans and took a sample and gave him one, he continued to load up the wagon and told the inspector he was going back to the stables at One Hundred and Forty-fourth street; that when he arrived there he waited for the foreman to test the milk and he took about fifty-five cans out that morning to sell; that the main depot of the company is at Thirty-eighth street, between Tenth and Eleventh avenues, and he brings "the milk from the depot down to the stables and then it is tested." The foreman testified that the driver told him of the opening of the can by the inspector and he sent that can to the agent and it was never sold or exposed for sale, and that he tested all the cans and saw one other which he concluded was not fit for sale and sent that down to the agent also.

At the close of all the evidence the court said : " We have reached the conclusion that we can try him under this provision of the Sanitary Code, section 63. The Court finds the defendant guilty of having the milk in his possession." The sentence of the court was that the defendant should pay a fine of $100, and in default stand

committed to the city prison for thirty days. From the judgment of conviction thus entered the defendant appeals.

*James E. Smith,* for the appellant.

*Frederick W. Stelle,* for the respondent.

O'BRIEN, J.:

Section 63 of the Sanitary Code of the board of health of the department of health of the city of New York provides as follows:

"Section 63. No milk which has been watered, adulterated, reduced or changed in any respect by the addition of water or other substance, or by the removal of cream, shall be brought into, held, kept or offered for sale at any place in the city of New York, nor shall any one keep, have or offer for sale in the said city any such milk. The term ' adulterated,' when so used in this section, means," etc.

In framing the complaint under this section against the defendant it was specified that, on the date stated, on a wagon at the West One Hundred and Thirtieth street milk station in the city of New York, the said wagon being a place where milk " was then kept for sale, one John Timmerman did then and there unlawfully keep, have and offer for sale 40 quarts of impure and unwholesome milk, * * * and that such impure * * * milk was then and there, by the said John Timmerman, unlawfully held, kept and offered for sale."

The evidence fell far short of supporting the complaint, in that it failed to show that the defendant had the milk for sale, and this was the conclusion of the Special Sessions, its finding being, not that the milk in the possession of the defendant was then held or offered for sale, but, as pointed out, that the evidence sustained the view (about which there was no dispute) that he had forty quarts of impure milk in his possession, and upon this ground it was held that he had violated section 63 of the Sanitary Code.

In answer to the appellant's claim, that the board of health may not pass and enforce such a provision, it is sufficient to say that the Legislature, in the exercise of its constitutional authority, may confer upon boards of health power to enact sanitary ordinances having the force of law in the districts over which their jurisdiction extends.

(*Polinsky* v. *People*, 73 N. Y. 65.) Nor is there force in the defendant's further contention, that section 63 of the Sanitary Code was repealed by section 1172 of the charter of the city of New York (Laws of 1897, chap. 378, as amd. by Laws of 1901, chap. 466), and that the State Law (Agricultural Law, Laws of 1893, chap. 338, § 22, as amd. by Laws of 1900, chap. 101) is alone controlling upon this subject. The provision of the Sanitary Code is not inconsistent with the statute, but is, in its nature, merely a more rigorous and additional prohibition or requirement, valid and binding within the city of New York.

The single question presented, therefore, for our consideration is whether the mere possession of adulterated milk in the city of New York is an offense punishable under section 63 of the Sanitary Code. In addition to this section, which has for many years been in force, and was originally adopted in 1876 and known as section 186 of the Sanitary Code, we have the prohibitions of the general State Law embodied in section 22 of the Agricultural Law, to which we have already referred. This latter provision has frequently been construed, but therein nothing is said about mere possession of adulterated milk, nor is there anything therein or in any other law of the State to the effect that such possession alone is a crime. And whether section 63 of the Sanitary Code is broad enough to make it a crime has never, so far as we know, been passed upon. It is, however, certainly a strong argument in favor of the construction that mere possession does not under the ordinance constitute a crime, to find that, during the long period that has elapsed since the section was enacted, and with all the zeal displayed by the department of health to enforce the Sanitary Code, it has never before been urged that, apart from any intention to sell, the mere possession of adulterated milk was a crime. And here, as pointed out, the complaint did not attempt to charge the defendant simply with possession, but alleged that he " held, kept and offered for sale " impure milk.

The question for our consideration is whether section 63 is susceptible of the construction that thereby the bringing in of adulterated milk for any purpose is forbidden and the possession of such milk is made a crime. The language employed is, that such impure milk shall not " be brought into, held, kept or offered for sale," and

thus it will be seen that the purpose or intent for which the adulterated milk is brought in, held, kept or offered is an essential element of the offense.

Some force is lent to this construction from the language in the opinion in the case to which we have already referred of *Polinsky* v. *People* (*supra*), where, speaking of the difference between the general statute then in force (Laws of 1862, chap. 467, as amd. by Laws of 1864, chap. 544) which was similar to section 22 of the Agricultural Law and the ordinance, it is said (p. 70): " The third count (of the indictment) charges an offense not embraced in the statute of 1862 but which is embraced in the ordinance, viz., bringing adulterated milk *into the city of New York for sale.* The statute relates only to *selling or exposing* impure or adulterated milk for sale. The ordinance may be violated and the offense of bringing into the city impure or adulterated milk for sale may be complete without either selling or exposing it for sale." Although not authoritative, because the question was not there presented, we have here an argument for the construction which, we think, should in this case prevail, that in the ordinance, as well as in the statute, the intent or purpose for which the milk was brought into and held within the city, namely, for sale, constituted the gravamen of the offense. In other words, the intention to sell such milk or to have it for sale was, as stated, an essential element of the offense, and mere possession alone, apart from any such intent or purpose, was not inhibited. (*People* v. *Wright,* 19 Misc. Rep. 135 ; *People* v. *Kellina,* 23 id. 134 ; *People* v. *McDermott-Bunger Dairy Co.,* 38 id. 365.)

If it were the design of those who formulated the ordinance to make possession alone, or the bringing into the city alone of adulterated milk, regardless of whether it was or was not intended for sale, a crime, then language is easily susceptible of being so molded as to express that design. The ordinance being a penal one is to be strictly construed, and it is sufficient to say that the language employed is so doubtful and inconclusive that we would not be justified after the lapse of all these years in giving a broader scope than that which has heretofore been claimed for it or which in any adjudicated case it has obtained.

Having reached the conclusion, therefore, that the construction given to the ordinance by the Court of Special Sessions, that mere

possession alone constituted a crime, was erroneous, it follows that the judgment appealed from should be reversed and a new trial ordered.

VAN BRUNT, P. J., PATTERSON and McLAUGHLIN, JJ., concurred; LAUGHLIN, J., concurred in result.

Judgment reversed and new trial ordered.