THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. SWIFT AND COMPANY, Respondent.

Argued April 23, 1941; decided June 12, 1941.

*William C. Chanler, Corporation Counsel* (*Stanley Buchsbaum, Paxton Blair* and *Fred Iscol* of counsel), for appellant. A conviction for violation of section 163 of the Sanitary Code does not require proof or a finding of guilty intent. (*Verona Central Cheese Co.* v. *Murtaugh*, 50 N. Y. 314; *People* v. *Kibler*, 106 N. Y. 321; *People* v. *Bowen*, 182 N. Y. 1; *People* v. *Greenberg*, 134 App. Div. 599; 28 A. L. R. 1385; 26 C. J. tit. " Food," p. 765; 11 R. C. L. tit. " Food," p. 1129; *United States* v. *13 Crates of Frozen Eggs*, 208 Fed. Rep. 950; *Hobbs* v. *Winchester Corp.*, [1910] 2 K. B. 471.) The defendant held, kept or stored unwholesome chickens for sale. (*People* v. *Williams, Inc.*, 172 App. Div. 68; *People* v. *Greenberg*, 134 App. Div. 599; *People* v. *Friedman*, 138 App. Div. 29; 200 N. Y. 591; *People* v. *Kramer Markets, Inc.*, 254 App. Div. 827.)

*Albert L. Stark* and *Lewis A. Ackley* for respondent. The People failed to establish that the defendant's possession of the unwholesome food constituted a violation of section 163 of the Sanitary Code. (*People* v. *Timmerman*, 79 App. Div. 565; 179 N. Y. 550; *People* v. *Williams, Inc.*, 172 App. Div. 68; *People* v. *Woolworth*, 246 App. Div. 838;

250 App. Div. 864; *People [Levinson]* v. *Waldorf Systems, Inc.*, 257 App. Div. 626; *People* v. *Wallace & Co.*, 282 N. Y. 417; *People [Johnson]* v. *Capone Co.*, 254 App. Div. 235.) Any presumption of intent to have, keep or sell arising from the possession of impure food was repelled by defendant's proof. (*People* v. *Wallace & Co.*, 282 N. Y. 417; *People* v. *Woolworth Co.*, 246 App. Div. 838; 250 App. Div. 864; *People* v. *Timmerman*, 79 App. Div. 565; *People [Levinson]* v. *Waldorf Systems, Inc.*, 257 App. Div. 626.)

FINCH, J.   This is an appeal from an order of the Appellate Division reversing a judgment of conviction for violation of the Sanitary Code (§ 163), dismissing the information and remitting the fine, one justice dissenting from the dismissal of the information and voting for a new trial.

The question presented is whether a judgment of conviction for the possession for sale of decomposed and unhealthy food kept in a storeroom from which salesmen replenish stock for sale in the city of New York may be reversed solely on the ground that the defendant has acted in good faith.

The facts, in so far as necessary to present the issues, are briefly as follows:

The defendant maintains a place of business in a building consisting of a basement and three upper floors at Fort Green place, Brooklyn.   The main floor is used in the sale of poultry and meats.   The basement is divided into two sections.   In one, described as a cooler or freezer, poultry is stored to be held in readiness to be taken to the sales floor and sold.

Health department inspectors made a routine visit to the premises on November 15, 1939.   After finding the food on the main floor, the sales room, to be in satisfactory condition, they proceeded to the basement where poultry was kept awaiting removal to the selling rooms.   There they found at least twenty-two pieces of poultry, weighing approximately 120 pounds in all, which were covered extensively with white, green and black mold.   Black mold is the last

stage of mold, which progressively becomes white, then green and finally black. Where such black mold is encountered, the article is absolutely unhealthful for human consumption. The state of decomposition of the condemned poultry is not in controversy, as counsel for the defendant conceded that the condemned poultry was unwholesome.

The defendant contends upon this appeal that it established at the trial that it did not sell or offer for sale or in any way intend to sell its poultry without subjecting it to three different inspections and if, during the course of any inspection, any poultry was found to be unsound, it was destroyed. The poultry in question had not undergone all of the inspections which defendant conducts before selling or offering for sale. The witnesses for defendant testified that the poultry was inspected when it was delivered to the defendant and again when it was sent from the basement cooling room to the main floor for sale. Both of these inspections are merely on a sampling basis, that being the custom of the trade. Three to five boxes are examined out of a lot which might range from 25 to 400 boxes. They consist merely of removing the top cover of the box and looking at the breast of the chicken. Only if the breast reveals a condition which arouses suspicion does the examination go beyond this. Mold on the backs or sides of the poultry would escape detection. The defendant explained that the unwholesome condition of the poultry condemned escaped its attention because the mold was on the so-called hips of the chickens.

The third inspection is made by the customer at the time that he buys the poultry. This inspection involves the opening of all boxes, but at times — although defendant insists that such occasions are rare — this final examination is omitted and apparently depends entirely upon the wishes of the customer when that customer is present, rather than the protection of the public.

The trial court found the defendant guilty, pointing out that the inspections employed were inadequate to reveal unwholesomeness. The Appellate Division reversed

upon the ground that while it was true that the poultry was intended to be sold, it was also equally true that it was not to be sold if it had been found by defendant or the customer to be unwholesome. Since by this standard the defendant was held to have acted in good faith, and that defense was considered valid, the conviction was reversed as a matter of law.

For the protection of the health of the people of the city, the Sanitary Code provides, among other things, that no poultry which is not healthy, wholesome or safe for human food, or that died by disease or accident, shall be brought into the city or held, kept, offered for sale, or sold as food. (Sanitary Code, § 163.) Other provisions provide that by the mere possession of food by a dealer therein such food shall *prima facie* be deemed to be held, kept, offered for sale or sold as food. (§ 138.) Also that the " presence of food * * * in any part of the establishment shall be deemed *prima facie* evidence of its use for human food." (§ 148, reg. 23.) It is also provided that food " which has become unfit for human consumption, shall be kept separate * * * from other foodstuffs which are held, kept, and offered for sale, * * * marked ' Condemned ' and removed daily." (§ 148, reg. 27.)

In earlier times, dealing in unwholesome food was treated to a large extent like other crimes, and proof of guilty knowledge was essential to a conviction. (*Verona Central Cheese Co.* v. *Murtaugh*, 50 N. Y. 314.) Not long thereafter it was pointed out that " It is notorious that the adulteration of food products has grown to proportions so enormous as to menace the health and safety of the people * * *. Such an emergency may justify legislation which throws upon the seller the entire responsibility of the purity and soundness of what he sells and compels him to know and to be certain." (*People* v. *Kibler*, 106 N. Y. 321, 324.) Thus the courts have recognized that experience has demonstrated through the years that repressive measures which depend for their efficiency upon proof of guilty knowledge on the part of the dealer and of his intent to sell unhealthy

food are of little practical use. Thereafter it was repeatedly held that violations of food laws are not excused by lack of guilty intent or by mere good faith on the part of the violator. (*People* v. *Bowen*, 182 N. Y. 1.) This rule is not confined to New York and is of almost universal application. (26 C. J. tit. " Food," p. 765; 11 Ruling Case Law, tit. " Food," p. 1129.) The effect of these cases has been to throw upon the the seller of foodstuffs the burden of selling unhealthy food at his peril. In *Hobbs* v. *Winchester Corporation* ([1910] 2 K. B. 471, 481) it was said: " Who is to take the risk of the meat being unsound, the butcher or the public? In my opinion the Legislature intended that the butcher should take the risk and that the public should be protected, irrespective of the guilt or innocence of the butcher. The knowledge or possible means of knowledge of the butcher is not a matter which affects the public; it is the unsound meat which poisons them; and I think that the Legislature intended that the butcher should sell unsound meat at his peril."

Legislation in this State has gone further than these cases and provided that the mere " presence of food * * * in any part of the establishment shall be deemed *prima facie* evidence of its use for human food." (§ 148, reg. 23.) It follows that unless this presumption is overcome this conviction must be upheld.

The defendant relies upon *People* v. *Wallace & Co.* (282 N. Y. 417) to sustain its contention that where inspections are to be made in good faith between the time of the possession and the time of sale the statute has not been violated. That authority is not applicable upon the facts in the case at bar. In that case an inspector of the Health Department of the city found in the possession of the defendant, a candy manufacturer, twelve cans that were swollen and bulging and contained grapes that had become unwholesome. Those cans had been in the storeroom for at least one month. Witnesses for the defendant testified that these grapes were purchased to be used in the manufacture of candy and not for sale in their present form.

The magistrate in the *Wallace* case accepting that testimony convicted the defendant on the theory that mere possession of the unwholesome food required a conviction, but found that the defendant would not have used the grapes, either in their present form or in any other form. This court held that where the defendant submits proof which causes the triers of fact to find that the food held in possession would not be used the presumption that the food is held for sale has been rebutted and the statute does not apply.

In the case at bar, however, the method of inspection employed by the defendant would not necessarily have revealed the unhealthy condition of the poultry. In such case the statute is violated by the mere holding for sale of the food upon the premises even though it might be that a buyer would inspect before buying or that the poultry would be reinspected by the defendant. We have here, therefore, a clear violation of the Sanitary Code (§§ 163, 138, 148, reg. 27).

The danger to human life and health from unwholesome food is so great that the courts generally have treated food differently from most other products. It has been placed in the same category as drugs, poisons and other instrumentalities which, if they are negligently dealt with, are ordinarily certain to affect seriously the public health and safety. The good intentions of the defendant would matter very little to consumers who might consume this poultry. Food laws are designed primarily, not for the punishment of the dealer, but for the protection of the consumer. In this field of law, the obligation to beware is on the seller rather than the buyer. Lack of proof of guilty intent does not satisfy that obligation.

It follows that the order of the Appellate Division should be reversed and the judgment of the Magistrate's Court sitting as a Court of Special Sessions of the City of New York, affirmed.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.