THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JAMES McMAHON, Doing Business as DURKEE'S FAMOUS· FOODS, Defendant.

City Magistrate's Court of New York, Borough of Queens, Municipal Term, January 22, 1948.

*John P. McGrath, Corporation Counsel (James Hurley* of counsel), for plaintiff.

*John T. Clancy* for defendant.

THOMPSON, M. Defendant herein is charged with a violation of section 163 of the Sanitary Code of the City of New York in that he did unlawfully have, keep and offer for sale 799 pounds of unwholesome eggs. Concededly he is in charge of a food manufacturing business in a four-story building in Queens County, wherein food products, to wit: salad dressing, etc., are manufactured. The refrigerator is located on the fourth floor, as is the processing room where salad dressing is prepared. Between 7:00 A. M. and 8:00 A. M. on August 7, 1947, a hot and humid day, approximately 1,400 pounds of liquid or broken eggs were delivered to the first floor of the defendant's premises and were thereafter taken to the refrigerator on the fourth floor. These eggs were to be used as an ingredient in salad dressing.

The eggs were contained in metal cans, unsealed but covered, each of which contained approximately 30 pounds. Upon delivery each can of eggs was not separately examined but 3 or 4 of the total of 47 cans were opened and a sample sent to the laboratory for an organoleptic test. At 11:30 a health inspector visited the premises after some 20 cans had been used in manufacture at one-half hour intervals in runs from 8:00 A. M. to 11:00 A. M. Upon direction of the inspector the defendant caused 4 cans to be opened of the remaining 27 and the contents were pronounced bad, sour and foul-smelling and having an odor of decomposition, all of which were characterized as putrid by said inspector who thereupon called for his supervisor because of the large quantity to be examined and possibly condemned. Pending the arrival of the supervisor at 2:30 P. M., the entire 799 pounds or 27 cans were locked in defendant's refrigerator and not disturbed. Thereafter all of the 27 cans were examined and condemned as putrid without objection by defendant. The foreman of the salad manufacturing division testified that he smelled and tasted all eggs after taking them from the refrigerator in order to use them in the manufacture of salad dressing, and that he had done so with respect to the 20 cans used up to 11:00 A. M. The salad dressing containing such 20 cans of eggs was pronounced wholesome by the inspector who testified

that he could not detect a putrid egg in the finished product because of its great spice content. Regulations of the Health Department require that liquid eggs be stored or kept under temperature of 45° or less. The temperature of the defendant's refrigerator as shown on its automatic temperature recording disc (Deft. Exhibit 2) was 55° F. at 8:30 A. M., 56° F. at 9:00 A. M., 58° F. at 10:00 A. M., 58° F. at 10:30 A. M., 60° F. at 11:00 A. M., 61° F. at 11:30 A. M., 62° F. at 12:00 M., 62° F. at 1:00 P. M., 46° F. at 2:00 P. M., 41° F. at 2:30 P. M. The temperature of the eggs themselves at 2:30 P. M. was 51° F. Defendant admitted that the high temperature was due to the failure of an employee charged with supervision of the refrigerating system.

Defendant contends that he did not sell or offer the putrid eggs for sale in any way without due inspection and care and that if the food were found to be putrid or bad it would not have been used.

There is little contention on the part of the defendant that the eggs were in fact wholesome and this court finds as a fact that they were of bad odor and putrid and accordingly unwholesome. Mere possession of unwholesome food however does not constitute a violation of section 163 if the presumptions provided for in sections 148 and 138 are overcome. (*People* v. *Woolworth Co.*, 250 App. Div. 864.) Section 138 provides '' Food in the possession of * * * a dealer in food shall, prima facie, be deemed to be held, kept, or offered for sale as human food ''. Section 148 (regulation 18 thereof) provides that '' presence of food * * * in any part of the establishment shall be deemed prima facie evidence of its use for human food '', and thus it follows that unless these presumptions are overcome the motion to dismiss must be denied. (*People* v. *Swift & Co.*, 286 N. Y. 64, 69 [1941]).

Health legislation in this State, particularly laws relating to food, is most paternal and though it is criminal in nature and for that reason should be strictly construed, it is well established that such legislation is designed primarily not for the punishment of the dealer or manufacturer but for the protection of the consumer. In this field of law the obligation to beware is on the seller or manufacturer rather than the buyer (*People* v. *Swift & Co., supra*).

There is little relief for the defendant in the case of *People* v. *Wallace & Co.* (282 N. Y. 417) upon which he principally relies. That case was decided by almost the same court as the *Swift* case. Judge (now Chief Judge) LOUGHRAN and Judge FINCH

who wrote the opinions concurred in both cases. In the *Wallace* case little or no connection existed between the bad food locked in a storeroom in sealed containers and its ultimate use in a manufactured product or its sale. The facts in this case are clearly distinguishable from that situation. No less than four times the defendant or his employees must have entered the refrigerator between 8:30 and 11:30 A. M., to remove eggs for further manufacture. The refrigerator was on the manufacturing floor. During all this time the refrigeration was inadequate and in fact an automatic recording thereof was made. Defendant or his agents should have appreciated this deficiency and most certainly this should have compelled an immediate inspection. An inspection made immediately before use is insufficient to overcome the presumption as aforesaid. Upon the defendant there was a greater duty imposed. The temperature and humidity of the day, the automatic record of the inadequate refrigeration, the presence in such inadequately refrigerated area of defendant or his employees, and the highly perishable nature of the unsealed liquid eggs places squarely on the defendant's shoulders a duty to inspect thoroughly and frequently. It was a duty which the defendant easily could, and should, have met. In fact, the partial use afforded complete opportunity for compliance. What was said in *Hobbs* v. *Winchester Corp.* ([1910] 2 K. B. 471, 481) might well be paraphrased here: " The Legislature intended that the butcher should take the risk and that the public should be protected ". (*People* v. *Thompson & Potter, Inc.,* 289 N. Y. 259 [1942].)

The motion to dismiss for failure to prove a case beyond a reasonable doubt is denied, and the defendant is found guilty as charged.