THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* QUEENS FARMS DAIRY, INC., Defendant.

City Magistrate's Court of New York, Borough of Queens, Municipal Term, July 18, 1949.

*David Cocher* for defendant.

*John P. McGrath, Corporation Counsel* (*James Hurley* of counsel), for plaintiff.

THOMPSON, M.  This is a prosecution brought under section 139 of the Sanitary Code of the City of New York wherein the defendant corporation is charged with having, selling or offering for sale a food deemed adulterated in that it was " colored * * * or * * * made to appear better than it really is ". The food in question is a milk product known and labeled as " egg nog " which on examination was found to contain a harmless coal tar product or dye known as tartrazine.  Tartrazine is yellow in color and nonnutritive.  It was part of a rum flavor not manufactured by defendant, which when mixed with milk, cream, eggs and other ingredients forms the product " egg nog ".  Eggnog concededly appears more " yellow " in color as a result of the ingredient tartrazine.

Section 139 of the Sanitary Code of the City of New York provides:

" *Food; sale of adulterated or misbranded prohibited; the terms ' food ', ' adulterated ', and ' misbranded ' defined.*

" No person shall have, sell or offer for sale in The City of New York any food which is adulterated or misbranded.  The term food as herein used shall include every article of food and every beverage used by man and all confectionery.  Food as herein defined shall be deemed adulterated: * * *

" (5) If it is colored or coated or polished or powdered, whereby damage is concealed or it is made to appear better than it really is."

At a time when the regulating statute read identically with the instant one, our appellate courts took opposite views with respect to the interpretation of this statute.  See *People* (*Com-*

*plaint of Nelson*) v. *Levinson* (234 App. Div. 791 [2d Dept., 1931]) interpreting chapter 20, article 9, section 139, Code of Ordinances, by a divided court, and *People v. Miller* (236 App. Div. 846 [2d Dept., 1932]) interpreting the same section and ruling by a unanimous court *Per Curiam:* "We are of opinion that the decision of this court in *People (Complaint of Nelson)* v. *Levinson* (234 App. Div. 791) should not be followed." Both of the above cases referred to the addition of yellow coloring matter to cake.

Before that time, in an action to recover a penalty, the Court of Appeals in *People* v. *Girard* (145 N. Y. 105, 110 [1895]) by a divided court, in sustaining the validity of a prohibition of the addition of coloring matter to a product known as cider vinegar, said: "Adding a foreign and artificial ingredient to a food product, even for purposes of color merely, is, in effect, an adulteration, and whether it be so described or forbidden by more specific terms is not material."

Thereafter in 1938 in the case of *People* v. *Biesecker* (169 N. Y. 53, 57) the Court of Appeals following *People* v. *Miller* (*supra*) in holding a regulation prohibiting the use of a preservative in butter to be unconstitutional, said in review of all the law so pertaining: "1. that the legislature cannot forbid or wholly prevent the sale of a wholesome article of food. 2. that legislation intended and reasonably adapted to prevent an article being manufactured in imitation or semblance of a well-known article in common use and thus imposing upon consumers or purchasers is valid. 3. that in the interest of public health the legislature may declare articles of food not complying with a specified standard unwholesome and forbid their sale."

Reviewing a long line of cases the court in *People* v. *Miller* (169 Misc. 648 [1938]) convicted under the instant section of the Sanitary Code a defendant who added coloring matter to orange juice. And in a 1932 *Per Curiam* the Court of Appeals exactly stated: "People have a right to know what they are buying." (*People* v. *French Bottling Works*, 259 N. Y. 4, 6 [1932], citing *United States* v. *Antikamnia Chemical Co.*, 231 U. S. 654, 655.)

The question posed therefore is: "Do people purchasing egg nog presume that the coloring emanates from the eggs therein?"

Eggs are nutritive and universally recognized as excellent food. Egg yolks are characteristically yellow and none of the other ingredients of eggnog are. Most of them are white or colorless. What else may a purchaser presume when he buys

eggnog yellow in color, but that it is richer in eggs than eggnog not so yellow. The name of the product is well known for many years. It includes the word " egg " in its description. It would be misleading and capricious for a purchaser to assume that the yellow coloring in eggnog came from a dye or coloring matter not a normal ingredient nor a labelled color added. The question therefore must be answered in the affirmative.

The defense that the defendant corporation had no knowledge of the presence of the dye tartrazine in the rum flavoring and thus had no intention to so include it in the final product is without merit. (*People* v. *Kibler,* 106 N. Y. 321, 324.) As was said by the court and followed strictly in *People* v. *Frudenberg* (209 N. Y. 218 [1913]) and *People* v. *Swift & Co.* (286 N. Y. 64, 70 [1941]): " Food laws are designed primarily, not for the punishment of the dealer, but for the protection of the consumer. In this field of law, the obligation to beware is on the seller rather than the buyer. Lack of proof of guilty intent does not satisfy that obligation."

It is apparent that the defendant corporation herein could have determined whether tartrazine was an ingredient of the rum flavoring it used. As against innocent purchasers in good faith it had a duty to discover for the protection of the public so that its product would not be " colored * * * whereby * * * it is made to appear better than it really is."

The motion to dismiss for failure of proof beyond a reasonable doubt is denied and the defendant corporation is found guilty as charged.