THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PHILIP LEWIS EGG PRODUCTS, INC., Defendant.

City Magistrate's Court of New York, Borough of Manhattan, Municipal Term, December 19, 1949.

*John P. McGrath, Corporation Counsel* (*Bernice P. Rogers* and *Morris W. Weiner* of counsel), for plaintiff.

*Joseph M. Lonergan* for defendant.

CANUDO, M. When Inspector William Friedman of the New York City Department of Health visited the defendant's egg-breaking establishment on Tuesday, August 9, 1949, he found, in the cooler, three cases marked XX containing ninety dozen check eggs. Upon candling, he found sixty dozen, or two thirds of these eggs, to be bad. The crates marked XX gave evidence of previous use, and there was nothing to indicate that the eggs which they contained had been candled. The president of the defendant corporation, who is the candler for the concern, informed the inspector that these eggs had been delivered on Thursday, August 4th, after he had finished candling for the day, and had been put in the cooler (the temperature of which the inspector found to be lower than that required by law) to be candled on the " next regular candling day ", which happened to be the day of the inspector's visit.

The defendant was summoned before this court for violation of regulation 27 of the General Regulations for the Conduct, Maintenance and Operation of Food Establishments, issued under section 148 of the Sanitary Code of the City of New York. The section itself regulates the conduct, maintenance and operation of food-handling establishments, and the specific regulation provides that " Food which has become unfit for human consumption shall be kept separate and apart from other foodstuffs which are held, kept, and offered for sale, properly denatured, marked ' Condemned ' and removed daily."

Following the presentation of evidence on both sides, the defendant moves to dismiss the complaint on the ground that the People have failed to establish its guilt beyond a reasonable doubt. The motion is denied.

The defense is based on the threefold contention that:

1. Said regulation 27 issued under section 148 of the Sanitary Code is unconstitutional in that it contravenes regulation 3 established under authority of section 160-b of the State Agriculture and Markets Law, which permits the sale of uncandled eggs under certain specified conditions.

2. Mere possession of bad food is not a violation of law, and in order to justify a conviction under said regulation 27 issued under section 148 of the Sanitary Code it is necessary to prove an intent to sell.

3. A regulation referring to the treatment of bad food is not violated until such food has been found to be bad.

All three of these contentions are untenable, for the reasons set forth below.

These eggs obviously had not been candled, and the bill accompanying them bore the notice required under the State Agriculture and Markets Law to permit their sale as uncandled eggs. Though it is true that what the State specifically permits a municipality cannot interdict, and while the grant of local administrative power (under which the Sanitary Code exists) never confers authority to abrogate a general State statute (*Matter of Kress* v. *Department of Health of City of N. Y.*, 283 N. Y. 55 [1940]), I find no inconsistency between the general provisions of the State law that eggs may under certain conditions be sold without candling and the specific requirement of the Sanitary Code that unwholesome foodstuffs be denatured, marked " Condemned " and removed daily from the food-handling establishments described by the Sanitary Code. The courts of this State have clearly affirmed the right of a municipality to enact *additional protective provisions* to meet special or peculiar conditions. (*Polinsky* v. *People*, 73 N. Y. 65 [1878]; *People* v. *Lewis*, 295 N. Y. 42 [1945].) This principle is very clearly set forth in Mr. Justice Levy's opinion in *Heller* v. *Department of Health of City of N. Y.* (194 Misc. 96, 97 [1949]), wherein he states that " ' A municipality which is empowered to adopt health regulations may, in spite of general regulations by the State, adopt additional regulations or requirements, where there is a real distinction between the city and other parts of the State. They must be based upon special conditions existing in the city.' "

It cannot be denied that a city of eight million inhabitants, all of whom look to their municipal health authorities to protect them against the sale and distribution of unwholesome foods,

operates under such " special conditions " as will justify the existence of a regulatory ordinance such as the one here in question. This section of the Sanitary Code does not attempt in any way to limit the sale of uncandled eggs. It simply protects the public from unwholesome foods. It would be most illogical to hold that an exemption from responsibility must be found wherever such unwholesome food happened to consist of uncandled eggs.

In support of its second defense, the defendant corporation presents numerous decisions involving section 163 of the Sanitary Code, which prohibits foods which are not " healthy, fresh, sound, wholesome or safe for human food " from being " brought into the City of New York or held, kept, offered for sale or sold as such food or kept or stored anywhere in the said City." The defendant's contention that *mere possession* of impure food establishes only *prima facie* evidence of an intention to hold, keep or offer it for sale as human food is correct wherever section 163 is in issue. The courts have so held, and other sections of the Sanitary Code apply specifically to carry out this intent. (*People* v. *Timmerman*, 79 App. Div. 565, affd. 179 N. Y. 550 [1904]; *People* v. *F. W. Woolworth Co.*, 246 App. Div. 838 [1936]; *People* v. *A. J. Capone Co.*, 254 App. Div. 235 [1938]; *People* v. *Waldorf System Inc.*, 257 App. Div. 626 [1939]; *People* v. *Wallace & Co.*, 282 N. Y. 417 [1940]; *People* v. *Swift & Co.*, 286 N. Y. 64 [1941]; *People* v. *McMahon*, 191 Misc. 68 [1948]; Sanitary Code, §§ 138, 148, regs. 18, 23.)

The language of regulation 27 issued under section 148 of the Sanitary Code and of its identical regulation pertaining to retail establishments (Sanitary Code, § 150, reg. 17) is quite specific and its directions are unmistakable. We need not go beyond the regulation itself to determine whether there is compliance with its requirements in any particular case. In *People* v. *Stasiuk* (293 N. Y. 788, affg. 267 App. Div. 858 [1944]), for instance, the conviction of a retail butcher was upheld in a prosecution involving the presence of contaminated meat in an open barrel in the refrigerator, even though an envelope on top of the barrel contained specific directions for the return of the meat; in *People* v. *Vineland Butter & Egg Corp.* (267 App. Div. 977 [1944]) conviction of an alleged violator of regulation 27 issued under section 148 was unanimously affirmed, where the evidence showed the existence of a large number of eggs in wooden cases in the defendant's premises, four fifths of which had to be condemned, and the explanation given by

the defendant was that its manager had been too busy to have them candled out in the few days since their delivery to the defendant's establishment; and in *People* v. *F. W. Woolworth Co.* (271 App. Div. 892 [1946]) the judgment of the Court of Special Sessions was likewise unanimously affirmed, where the proof showed that since the gummed tape had come off on one side of an unopened crate of cookies standing in a cellar store-room under a lunch fountain, the cookies showed signs of mouse infestation.

In further defense of the defendant's failure to denature the eggs found by Inspector Friedman, to mark them " Condemned," and to remove them from the premises as required by regulation 27 issued under section 148 the argument is presented that until food is actually found to be bad this regulation is not violated.  The defendant contends that since the only way that the existence of bad eggs may be determined (while still in the shell) is by candling, there is no responsibility on the defendant's part until the candling is done.  If this view were to prevail, it would be very easy for an intentional violator to allow impure food to remain on his premises for several days and then try to excuse himself, if by chance he should be visited by an inspector during that period, by pleading lack of time to inspect or adherence to a schedule providing for inspection at infrequent intervals.  Certainly, no such possibility of evasion was intended when the regulation was enacted. " Violations of food laws are not excused by lack of guilty intent or by mere good faith on the part of the violator " (*People* v. *Swift & Co.* 286 N. Y. 64, 69, *supra*).  If the working schedule in the defendant's establishment does not permit prompt candling of eggs, some new arrangement will have to be made, if additional violations are to be avoided, so that eggs may be inspected within a very short time after their arrival.

Although these impure eggs were, to a certain degree, kept separate and apart from other foodstuffs in the premises, their presence there between August 4th and August 9th — in the face of the regulation which calls for denaturing, labeling and *daily removal* of such eggs — constitutes a clear violation of regulation 27 issued under section 148 of the Sanitary Code.