OPINION OF THE COURT
Louise Gruner Gans, J.
Defendants, owners of a multiple dwelling at 219-21 West 145th Street, Manhattan, are charged by two separate informations, with failing to "provide, install and maintain window guards” in a number of apartments in that building, in violation of New York City Health Code § 131.15 as amended and of Local Laws, 1940, No. 33 of the City of New York (Administrative Code of City of New York § 17-123). These sections of the New York City Health and Administrative Codes require the installation of window guards in apartments inhabited by children under the age of 11. The alleged failure to install window guards, where required, is the basis for the additional charges of failure "reasonably to act and to take necessary precautions” to protect human life and health (NY City Health Code § 3.09), and of maintaining a nuisance (NY City Health Code § 3.11).
Defendants have moved to dismiss the charges against them claiming that the window-guard regulations, as recently amended, are void because they were never published in the City Record. The regulations are also said to contravene numerous unspecified constitutional requirements in that (1) no intent or mens rea is allegedly required to establish a violation of the window-guard regulations; (2) culpability under the window-guard regulations is premised on an irrebuttable presumption of guilt; (3) section 558 (e) of the New York City Charter arbitrarily classifies the violation of every New York City Health Code regulation, including section 131.15, as a misdemeanor; (4) these provisions are enforced in a discriminatory fashion in that only private landlords and not managers of publicly owned housing are prosecuted; (5) the regulations constitute an unauthorized tax; and (6) they subject the defendants to severe economic hardship.
Extensive consideration of defendants’ omnibus challenge to New York City Health Code § 131.15 shows it to be without merit.
A brief description of the underlying statutory/regulatory scheme may be helpful to an understanding of the issues and *714 the applicable law. Section 131.15 of the New York City-Health Code, requiring the installation of window guards in apartments where children under the age of 11 reside, was first enacted in 1976. The section set forth a detailed landlord-tenant inquiry-response procedure to be followed by landlords in order to determine which apartments require window guards. Under the 1976 enactment, property owners subjected to criminal prosecution or civil penalties for failure to install these safety devices could defend by showing that they had made the proper inquiries and had received either a negative response or no response from their tenants. (NY City Health Code former § 131.15 [b].)
In 1986 the New York City Administrative Code was amended and implementing regulations (the regulations or implementing regulations) promulgated. (Local Laws, 1986, No. 33 of City of New York, codified at Administrative Code § 17-123.) The amendments and regulations were duly published.[1] Instead of the previous landlord-tenant inquiry-response procedure, the amendments and regulations require landlords to provide their tenants with annual notices prescribed by the Department of Health, and to attach the notices to all leases. (Regulations §§ 2, 3.)
Window guards must now be installed not only where children under the age of 11 reside, but also on request, even where no children are in residence. (Regulations § 3 [a], [c], [d].) When those in control of a multiple dwelling lack knowledge of a tenant’s need or desire for window guards, they are required to conduct an inspection of the affected apartment or apartments. Landlords must inform the Health Department and request its assistance when notices provided pursuant to regulations § 3 (a), (b) and (d) are not returned, and whenever they are refused access to a housing unit in order to conduct an inspection. A tenant’s negative response or failure to respond was eliminated as a defense if the owner had actual knowledge of the need or desire for window guards or did not make the required effort to find out. (Regulations § 3.) For the first time, the regulations penalize conduct by tenants impeding the effectiveness of the window-guard program. Refusal to *715 respond to a landlord’s notice or to permit inspection is prohibited. (Regulations § 4.)
The 1986 amendments to the Administrative Code were accompanied by amendments to New York City Health Code § 131.15, including the expanded obligation to provide window guards on request (§ 131.15 [c]). Not only was the defense based on a tenant’s failure to respond or on a negative response deleted, but the new section 131.15 made it the "duty of each such person who manages or controls a multiple dwelling to ascertain whether such child resides therein”. (NY City Health Code § 131.15 [a].) In addition, failure to install or maintain window guards is declared to be a public nuisance, as well as a condition dangerous to life and health (NY City Health Code § 131.15 [d]).
Taken together, New York City Health Code § 131.15 as amended in 1986, and section 17-123 of the Administrative Code along with the implementing regulations will be referred to hereafter as the Window-Guard Rules.
STRICT LIABILITY
Defendants contend that the imposition of criminal sanctions for violation of section 131.15 of the New York City Health Code may not be premised on strict liability.
It is true that "criminal offenses requiring no mens rea have a 'generally disfavored status.’ ” (Liparota v United States, 471 US 419, 426 [1985].) However, particularly in areas affecting public health and safety, it has long been recognized that the creation of strict liability offenses was a valid exercise of State and local police power. Typically, strict liability offenses are prescribed as a matter of legislative policy rather than because of their intrinsically evil nature. (Morissette v United States, 342 US 246 [1952]; United States v Dotterweich, 320 US 277 [1943]; People v Munoz, 9 NY2d 51 [1961]; People v Swift & Co., 286 NY 64 [1941]; People ex rel. Price v Sheffield Farms-Slawson-Decker Co., 225 NY 25 [1918]; Tenement House Dept. v McDevitt, 215 NY 160 [1915]; People v Miller, 138 Misc 2d 639 [Sup Ct, NY County 1988].)
Indeed, Penal Law §§ 15.10 and 15.15 recognize that strict liability offenses may be created by the Penal Law. (People v Davis, 112 Misc 2d 138 [Crim Ct, Bronx County 1981].)
In enacting Administrative Code § 17-123 and Health Code § 131.15, pursuant to New York City Charter § 558 (e), the City Council and Health Department, respectively, have acted *716 to protect the lives of young children from accidental death and injury resulting from window falls, based on extensive findings concerning the frequency of such accidents, as noted in Bryant Westchester Realty Corp. v Board of Health (91 Misc 2d 56 [Sup Ct, NY County 1977]) and Matter of Sorbonne Apts. Co. v Board of Health (88 Misc 2d 970 [Sup Ct, NY County 1976]).
The hazard sought to be prevented by the Window-Guard Rules is of the sort traditionally dealt with by means of strict liability offenses. The complexity of modern life, especially in modern urban areas, has "call[ed] into existence new duties and crimes which disregard any ingredient of intent.” (Morissette v United States, 342 US, supra, at 253.) Numerous and detailed regulations controlling the exposure of workers to industrial hazards, the high speed of mechanized transport, the crowding and conditions of living quarters, and mass distribution of food and drugs all seek to minimize risk to the public health, safety or welfare. (Supra, at 254.) Like these programs, the several provisions governing window guards are a comprehensive scheme to protect the lives and safety of young children by requiring of those who control and are obligated by law to maintain residential property that they take the elemental precautions dictated by common sense. Effective enforcement of such broad-based programs would be illusory if intent were made an element of these offenses. (People v Swift & Co., 286 NY 64, 68-69 [1941], supra; People v Ortiz, 125 Misc 2d 318 [Crim Ct, Bronx County 1984].)
The recent decision by the Court of Appeals in People v Coe (71 NY2d 852 [1988]) addressed the question of when criminal prosecution of violations of the Public Health Law was permissible on the basis of strict liability.
Coe (supra) involved an interpretation of the language of section 12-b (2) of the Public Health Law imposing sanctions on any person who "wilfully violates” a provision or regulation of the Public Health Law. The Court of Appeals recognized that for a statute to impose strict liability, "a clear legislative intent to impose strict criminal liability” is required. (Supra, at 855; Penal Law § 15.15 [2].) Not finding evidence of such intent, the court held that the phrase "wilfully violates” in Public Health Law § 12-b (2) requires a showing that the underlying offense (a violation of Public Health Law § 2803-d [7]) was committed "knowingly,” that is, with a culpable mental state. (Supra, at 855.)
*717 Sanctions for violations of regulations promulgated by local boards of health are prescribed by Public Health Law § 12-b (1) rather than § 12-b (2). However, the language used in both is similar.[2]
Assuming without deciding that Coe (supra) does import into Public Health Law § 12-b (1) from § 12-b (2) the reading given by Coe of "wilfully” as equivalent to "knowingly” (People v Coe, supra, at 855), it still remains to be determined whether in the instant case this prevents the City of New York from enforcing provisions of its own health code on a strict liability basis.
The court concludes that Coe (supra) poses no obstacle to prosecution of the proceedings at bar on the basis of strict liability, first, because the Window-Guard Rules clearly show that they are intended to be enforced on that basis, second, because the sanctions for their violation are prescribed pursuant to New York City Charter § 558 (e) and not pursuant to Public Health Law § 12-b, and, third, because such prosecution is neither preempted by nor inconsistent with enforcement of a State scheme.
An unambiguous intention to hold violators culpable on the basis of strict liability permeates the regulatory scheme concerning window guards. Each provision reveals the intent of the authors to hold those in control of residential property liable without a requirement of mental culpability. Neither section 558 (e) of the New York City Charter, nor section 131.15 of the New York City Health Code, nor section 17-123 of the Administrative Code with its implementing regulations, contains any wording such as intentionally, knowingly, willfully, recklessly or negligently to indicate that violations of these sections involve a mens rea element. (Penal Law §§ 15.10, 15.15.) Throughout, the language used is that of absolute command.
*718 The elaborate pattern of individualized notice and response forms, of apartment inspections and Health Department assistance is designed to eliminate, or reduce to a minimum, those circumstances from occurring which would provide a subjective basis for noncompliance. Leases "must” contain the required notices (Administrative Code § 17-123 [a]), and landlords and others "must cause” annual notices to be delivered (Administrative Code § 17-123 [b]). Window guards "shall be installed”, and, "it shall be the duty” of a landlord or other responsible person to ascertain whether they are required. (Health Code § 131.15 [a].) Further, pursuant to New York City Charter § 558 (e) "[a]ny violation of the health code shall be treated and punished as a misdemeanor”, and Administrative Code § 17-123 (d) states that any person who violates the provisions of section 17-123, or its implementing regulations, "shall be guilty of a misdemeanor”. In summary, in enacting the window-guard requirements and sanctions, the New York City Council and Board of Health clearly intended to create strict liability offenses.
The city’s authority to create such offenses derives not from Public Health Law § 12-b (1), but from section 558 (e) of the New York City Charter. In New York State, regulation of local health matters has by law and tradition been committed to local governments and health boards. (NY Const, art IX, § 2 [c] [10]; Municipal Home Rule Law § 10 [1] [ii] [a] [12]; [4] [a], [b]; Grossman v Baumgartner, 17 NY2d 345 [1966]; People v Blanchard, 288 NY 145 [1942].) Through these enactments, the State has delegated to localities the power to promulgate local laws on matters of public health and to declare violations of local laws to be misdemeanors, offenses or infractions. Pursuant to this scheme, New York City has enacted extensive public health regulations. (See, Administrative Code tit 17; NY City Health Code.) Authority to promulgate Health Code regulations is vested by New York City Charter § 558 (a), (b) and (c) in the City Board of Health. Section 27 (a) of the New York City Charter gives to the City Council the power to enforce its laws by means of criminal sanctions as authorized by Municipal Home Rule Law § 10 (4) (a) and (b). Section 558 (e) of the New York City Charter defines violations of the New York City Health Code as misdemeanors; New York City Charter § 562 authorizes prosecution of these violations in the Criminal Court.
The State Legislature itself, however, has also criminalized violations of the orders and regulations of local boards of *719 health. (Public Health Law § 12-b [1], the successor statute to former Penal Law § 1740; see, supra, at 717, n 2.)
As a consequence of these dual sources of authority to prescribe sanctions for public health violations, the city may rely on Public Health Law § 12-b (1) to define the offense, or it may define the offense legislatively pursuant to section 558 (e) of the New York City Charter.
In prescribing sanctions for the New York City Health Code and Administrative Code and implementing regulations concerning window guards, the city has exercised its power pursuant to section 558 (e) of the New York City Charter rather than rely on Public Health Law § 12-b (1). People v Coe (supra) neither bars the city from defining the sanctions for violation of its Health Code and Administrative Code pursuant to New York City Charter § 558 (e), nor from defining them on a strict liability basis.
Moreover, New York City Health Code § 131.15, Administrative Code § 17-123 and implementing regulations, and New York City Charter § 558 (e) are neither preempted by nor inconsistent with State law (Public Health Law § 12-b [1]). Article IX, § 2 (c) of the NY Constitution and section 10 (1) (ii) of the Municipal Home Rule Law confer broad authority on localities to legislate pursuant to the police power, provided such local laws are not inconsistent with the New York Constitution or general laws. A local government may not "exercise its police power when the [State] Legislature has restricted such an exercise by preempting the area of regulation”. (New York State Club Assn. v City of New York, 69 NY2d 211, 217 [1987], affd on other grounds 487 US —, 101 L Ed 1 [June 20, 1988], citing Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99, 105 [1983].)
Only when the State has evidenced a desire to occupy the entire field to the exclusion of local law will there be preemption. (Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91 [1987]; People v Judiz, 38 NY2d 529, 532 [1976]; People v Cook, 34 NY2d 100, 109 [1974]; People v Ortiz, 125 Misc 2d 318 [1984], supra.) The intent to preempt may be found in an express or implied declaration of State policy or the enactment of a comprehensive and detailed regulatory scheme in a particular area. (New York State Club Assn. v City of New York, 69 NY2d, supra, at 217; People v Ortiz, supra.)
Consistently with traditional State delegation of authority to municipalities to regulate local health matters, sections 312 *720 and 228 (3) of the Public Health Law, respectively, exempt New York City from the State’s requirements pertaining to local health boards and allow localities to enact and enforce, as not inconsistent with the State Sanitary Code (10 NYCRR ch I), their own health codes "which comply with at least the minimum applicable standards set forth in the sanitary code”. Such a scheme indicates an intent to leave to New York City a very broad field in which to regulate. Thus, there is no preemption here.
This scheme contemplates that State and local government may both be active regarding the same matters. The mere fact that a local law touches upon State-regulated areas or that the two regulatory schemes overlap does not render the local enactments invalid. (Council for Owner Occupied Hous. v Koch, 119 Misc 2d 241, 244 [Sup Ct, NY County 1983], affd on opn below 61 NY2d 942 [1984]; People v Judiz, 38 NY2d 529, 531-532, supra; People v Cook, 34 NY2d 100, 109, supra; People v Ortiz, supra.) The Sanitary Code does not touch upon the specific duty to install window guards. Clearly, the State has not chosen to regulate substantively in this area, but merely retains the power to prosecute violations of local codes.
Even assuming that under section 12-b (1) of the Public Health Law the State has proscribed knowing violations of the Window-Guard Rules, no right to commit such violations with lesser or no intent has been granted by State law. (See, Robin v Incorporated Vil. of Hempstead, 30 NY2d 347, 350-352 [1972].) Accordingly, nothing in the statutory scheme, enforcement process or specific wording of Public Health Law § 12-b (1) requires that New York City’s efforts to outlaw this conduct on a strict liability basis be invalidated.
Moreover, even if the local law is inconsistent with the State’s general law, it will be upheld if it is designed to deal with a specific local problem. (People v Cook, 34 NY2d, supra, at 109; Robin v Incorporated Vil. of Hempstead, 30 NY2d, supra, at 351 [1972]; Matter of Kress & Co. v Department of Health, 283 NY 55, 59; People v Ortiz, supra.) As the State’s largest urban area, New York City suffers a unique problem in the sheer numbers of children at risk, and large multistory dwellings suffering managerial neglect. "[Additional government control is necessary to meet the special housing problems existing in the City of New York”. (Council for Owner Occupied Hous. v Koch, 119 Misc 2d, supra, at 246.) Thus, even if the Window-Guard Rules were inconsistent, the city has addressed a special condition distinct in its intensity and *721 volume from that found elsewhere in the State, and therefore, they may be enforced on a strict liability basis.
IRREBUTTABLE PRESUMPTION
Defendants contend that Health Code § 131.15, as amended in 1986 to remove the previously available "automatic defense,” creates an irrebuttable presumption that "an owner of a building knows that a child under 10 years old lives in an apartment, despite lack of access, false answers by tenants to inquiries on the subject, or the absence of any response to inquiries.” This irrebuttable presumption is said to violate due process.
Prior to the 1986 amendment, New York City Health Code § 131.15 (b) provided that property owners could defend against prosecutions for violations of New York City Health Code § 131.15, by showing that they had made proper inquiries of a tenant and had received either a negative response or no response thereto; or had received a negative response and had not been notified that a child under the age of 11 had subsequently moved in. (NY City Health Code former § 131.15 [b].)
The fact that the 1986 amendments to section 131.15 removed these provisions does not mean either that an irrebuttable presumption was created, or that defendants prosecuted for violations of New York City Health Code § 131.15 were deprived of all defenses.
An irrebuttable or conclusive presumption is a rule of law which requires that a particular inference must be drawn from certain ascertained facts and cannot be rebutted. Such a presumption is equivalent to a substantive rule of law expressed in terms of rules of evidence. (See, Richardson, Evidence §§ 55, 57 [Prince 10th ed 1973]; People v Robinson, 97 Misc 2d 47 [Crim Ct, Kings County 1978]; People v Fauntleroy, 94 Misc 2d 606 [Westchester County Ct 1978], revd on other grounds 74 AD2d 612 [2d Dept 1980].)
While the presence of an irrebuttable presumption in a penal statute may raise due process concerns (see, Turner v United States, 396 US 398 [1970]; Leary v United States, 395 US 6 [1969]; Tot v United States, 319 US 463 [1943]; People v Leyva, 38 NY2d 160 [1975]), New York City Health Code § 131.15 does not create any presumption at all, rebuttable or irrebuttable. To establish that defendants violated section 131.15 (a), the People must establish beyond a reasonable *722 doubt and as a matter of fact that defendants are the owners or other persons who manage and control the property; that defendants failed to install window guards in the apartments specified in the information; and that one or more children under the age of 11 resided in each of the apartments in question at the time specified in the respective informations, or that window guards were requested prior to the specified time.
Defendants may defend on a number of grounds. They may show that no violation existed at the time and place charged. Additionally, owners who can show efforts at compliance with Administrative Code § 17-123 and implementing regulations, and the frustration of those efforts by others, may defend on that basis.
For example, section 3 (e) of the implementing regulations provides that where a tenant fails to respond to the owner’s annual notice and the owner has no actual knowledge of a tenant’s need or desire for window guards, the owner or the owner’s agent must conduct an inspection of the premises to ascertain whether one or more children under the age of 11 reside there, and if so, whether window guards have been installed. Section 4 of the implementing regulations provides that tenants may not "refuse, prevent or obstruct” such an inspection, and section 3 (f) requires a landlord who has been denied access to an apartment for purposes of such an inspection to notify in writing and request the assistance of the Health Department’s Window Falls Prevention program. Barring proof of the owner’s actual knowledge of the need for window guards, an owner who has received no response to the annual window-guard notice (Administrative Code § 17-123 [b]; implementing regulations § 3 [a]-[c]), who has been refused access to a tenant’s apartment, and who has notified the Health Department in accordance with implementing regulations § 3 (a) and (f) will have a defense to a prosecution for failure to install window guards as required by New York City Health Code § 131.15 (a).
Similarly, a tenant’s negative response concerning the need for window guards will be a defense to a prosecution for violation of New York City Health Code § 131.15 (a), as long as the owner had no actual knowledge of the need for window guards and made the mandated efforts to find out whether they were required. (Implementing regulations § 3.) The tenant’s provision of false information is itself unlawful. (Administrative Code § 17-123 [d]; implementing regulations § 4.)
*723 The defense of impossibility, in which a defendant shows that he or she was not, for some reason beyond control, capable of compliance, likewise remains available to defendants. (People v Sakow, 45 NY2d 131 [1978]; People v Fremd, 41 NY2d 372 [1977]; Oriental Blvd. Co. v Heller, 27 NY2d 212 [1970], appeal dismissed 401 US 986 [1971].)
Finally, there are safeguards within the New York City Health Code and 1986 implementing regulations which protect owners against liability when compliance is difficult or impossible. Section 131.17 of the New York City Health Code provides that owners complaining that compliance with section 131.15 presents hardships and difficulties may seek a modification of the requirements from the Commissioner of Health.
Plainly, defendants are not faced with an irrebuttable presumption of guilt merely by virtue of the absence of window guards on their properties. The combined provisions of Administrative Code § 17-123, the implementing regulations, and New York City Health Code § 131.15, as well as the presumption of innocence, safeguard their rights to contradict the People’s case as well as to interpose an appropriate defense.
ARBITRARY MISDEMEANOR CLASSIFICATION
Defendants challenge the constitutional validity of section 558 (e) of the New York City Charter because it classifies the violation of every New York City Health Code regulation, including section 131.15, as a misdemeanor, and none as either a felony, an offense or an infraction. While claiming that this feature of section 558 (e) results in an unlawful delegation of legislative power to the Board of Health, defendants acknowledge the authority of People v Blanchard (288 NY 145 [1942], supra). People v Blanchard held with respect to virtually the same statutes and statutory scheme that there was no unlawful delegation of legislative authority to the Board of Health either pursuant to New York City Charter § 558 (e) or former Penal Law § 1740, the predecessor statute to Public Health Law § 12-b.
Defendants have not offered any analysis to show that the classification of all New York City Health Code violations as misdemeanors involves a question of delegation of legislative power other than that already determined by People v Blanchard (supra). They appear to have mischaracterized their argument. Defendants’ objection to section 558 (e) of the New York *724 City Charter seems to be that it is arbitrary to classify all New York City Health Code violations as misdemeanors, regardless of the nature of the underlying offense.
Defendants do not have standing to raise objections to the classification of those sections of the New York City Health Code with which they are not charged. " '[A] person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.’ ” (Parker v Levy, 417 US 733, 759 [1974], quoting Broadrick v Oklahoma, 413 US 601, 610 [1973]; People v Hollman, 68 NY2d 202 [1986]; People v Smith, 89 Misc 2d 789, 791 [App Term, 2d Dept 1977]; People v Harris, 129 Misc 2d 577, 579 [Crim Ct, NY County 1985]; People v Darryl M., 123 Misc 2d 723 [Crim Ct, NY County 1984].) Notably absent from defendants’ submissions are any assertions that the classification of class A misdemeanor,[3] into which violations of New York City Health Code § 131.15 fall, is disproportionate to the offense.
Penal Law § 10.00 (4) defines a misdemeanor as "an offense, other than a 'traffic infraction,’ for which a sentence to a term of imprisonment in excess of fifteen days may be imposed, but for which a sentence to a term of imprisonment in excess of one year cannot be imposed.” There is no minimum or maximum on the imposable fines. (Penal Law § 55.10 [2] [a], [c]; § 80.05 [1], [3].)
In enacting New York City Charter § 558 (e), the city, within the limits of its powers, thus determined that no New York City Health Code violation should be punishable by less than 15 days’ imprisonment and that there be no limit to the fines that may be imposed. Defendants have not demonstrated, *725 nor does the court find, that this determination affecting the preeminently important sphere of public health is arbitrary either with respect to New York City Health Code violations in general or with respect to section 131.15 in particular. In densely populated, urban areas like New York City, violations of public health requirements may jeopardize the lives, health and safety of large numbers of people, and significant penalties to deter their commission can be justified.
SELECTIVE ENFORCEMENT
According to defendants, section 131.15 of the New York City Health Code and section 17-123 of the Administrative Code are enforced in a discriminatory fashion, singling out private landlords and not managers of city-owned housing. Their supporting affidavits present no facts to support this assertion.
Selective enforcement of an otherwise valid law may deny the right to equal protection of the laws as guaranteed by the United States and New York Constitutions. (US Const 14th Amend; NY Const, art I, § 11; Yick Wo v Hopkins, 118 US 356 [1886]; Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686 [1979].) However, in order to succeed on a claim of selective enforcement, defendants bear a heavy burden of providing intentional or conscious discrimination. (People v Goodman, 31 NY2d 262 [1972]; People v Utica Daw’s Drug Co., 16 AD2d 12, 18 [4th Dept 1962].) A party claiming selective or discriminatory enforcement must show not only that the law is not applied to others similarly situated, but that it has deliberately been applied unevenly based upon an arbitrary or prohibited classification. (Matter of 303 W. 42nd St. Corp. v Klein, supra; DiMaggio v Brown, 19 NY2d 283, 289 [1967].)
No violation of equal protection occurs where an administrative decision to enforce a law against a segment of wrongdoers is made, for example, on the basis of resource allocation, or deterrent effect. (Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d, supra, at 694.) Assuming, arguendo, that, as defendants assert in a conclusory fashion, noncompliant managers of city-owned dwellings are not prosecuted for window-guard violations, this might well be because the city as their employer or supervisor has other more direct means of securing their compliance.
Defendants’ bare assertions are insufficient to establish even a colorable claim of selective prosecution. An identical chai *726 lenge to the Window-Guard Rules was rejected in 1976 in Matter of Sorbonne Apts. Co. v Board of Health (88 Misc 2d 970 [Sup Ct, NY County 1976], supra) and nothing has been presented to this court to require a different result.
UNAUTHORIZED TAX/HARDSHIP
Defendants’ claims, unsupported by any factual showing, that the Window-Guard Rules constitute an unauthorized tax and impose an economic hardship do not require extended consideration. They have not shown that the Window-Guard Rules are a revenue-raising measure. (People ex rel. Einsfeld v Murray, 149 NY 367, 377-378 [1896].) Further, the same claim of economic hardship has been rejected twice. (Bryant Westchester Realty Corp. v Board of Health, 91 Misc 2d 56 [Sup Ct, NY County 1977], supra; Matter of Sorbonne Apts. v Board of Health, 88 Misc 2d 970, supra.) The court agrees with the conclusions in the cases cited.
For all the foregoing reasons, the defendants’ motion to dismiss is denied in its entirety.

. The amendments to the New York City Health Code and implementing regulations at issue have all appeared in the City Record, as required by New York City Charter § 558 (f) and (g). Regulations implementing section 17-123 of the Administrative Code of the City of New York appeared in the City Record on October 14, 1986; the amendments to the New York City Health Code were printed in the City Record on October 24, 1986.

. Section 12-b (1) of the Public Health Law reads in relevant part: "A person who wilfully violates or refuses or omits to comply with any lawful order or regulation prescribed by any local board of health or health officer, is guilty of a misdemeanor”. Section 12-b (2), on the other hand, is concerned with violations of the Public Health Law and State sanitary code. "A person who wilfully violates any provision of this chapter, or any regulation lawfully made or established by any public officer or board under authority of this chapter, the punishment for violating which is not otherwise prescribed by this chapter or any other law, is punishable by imprisonment not exceeding one year, or by a fine not exceeding two thousand dollars or by both.”

. Violations of the New York City Health Code are class A misdemeanors. (NY City Charter § 558 [e]; Penal Law § 55.10 [2] [b].) They entail a fine not to exceed $1,000 (Penal Law § 80.05 [1]), and/or a term of imprisonment not to exceed one year (Penal Law § 70.15 [1]).
Violations of Adminstrative Code § 17-123 or the implementing regulations, however, are unclassified misdemeanors which carry a fine of up to $500 and/or a prison term of up to six months. (Administrative Code § 17-123 [d]; Penal Law § 55.10 [2] [c].)
In those instances where the municipality wishes to impose fines for violations of the health regulations in excess of those fixed by Penal Law § 80.05 (1) for class A misdemeanors, it may do so by enacting an unclassified misdemeanor in which "the provisions of the law or ordinance that defines the crime” also prescribe the fine to be paid. (Penal Law § 80.05 [3]; §55.10 [2] [c].)