OPINION OF THE COURT
Bertram Katz, J.
Can New York City validly ban from its streets the possession of knives with a blade length of four inches or greater? In an apparent case of first impression, the court is called upon to determine the constitutionality of the recently enacted “Knife Law”, section 436-5.2 of the Administrative Code of the City of New York, which in journalistic circles has been nicknamed “The Sweetheart Law.”[1]
The defendant, Juan Ortiz, was apprehended on March 20, 1984 in front of a laundromat located on Featherbed Lane in The Bronx. The arresting officers allegedly thought he was fleeing the laundromat after a reported armed robbery. A search incident to arrest produced a *319 wallet belonging to another, 11 rolls of quarters, and a knife. The knife is of the folding type, with a four-inch blade. Mr. Ortiz is charged with criminal possession of stolen property and illegal possession of a knife. He has moved to dismiss the latter charge on constitutional grounds. (CPL 170.35, subd 1, par [c].)
The defendant’s attack on the “knife law” is twofold:
1. That the new law is unconstitutional on its face, and as applied to him; that it is vague, overbroad, and an unreasonable exercise of the police power by the municipality that enacted it.
2. That the law is inconsistent with and preempted by article 265 of the Penal Law.
The parties have submitted well-briefed memoranda of law which have aided the court’s deliberation. The office of the Corporation Counsel which was, in large measure, responsible for the “knife law”, declined the opportunity to formally intervene as a friend of the court.
The new knife law (Local Laws, 1983, No. 64 of City of New York) is the successor to a similar provision struck down by the Court of Appeals in 1961 in People v Munoz (9 NY2d 51). The old statute, Local Law No. 107 of 1959, banned knives and “any sharp pointed or edged instruments which may be used for cutting or puncturing” when possessed by persons under age 21 in the streets, parks or public places. Justice Van Voorhis listed three flaws which individually were sufficient to invalidate the statute:
1. The proscription against all knives or sharp-pointed instruments was too broad, criminalized the innocent possession of household objects (such as knitting needles) and was therefore an irrational exercise of the police power;
2. This irrationality was compounded by the considered omission of any mens rea or “scienter” requirement;
3. The over-all vagueness of this local law would allow the police to harass those whom they believed to be “bad boys and girls” (People v Munoz, supra, p 58), i.e., to exercise harsh and discriminatory enforcement. (Lanzetta v New Jersey, 306 US 451.)
*320 The new law makes two improvements:
1. Only knives with a four-inch blade length or greater are banned by the new law; and
2. The law applies to persons of all ages, thus avoiding equal protection issues.
Once again, the forbidden areas are the streets, parks or public places.[2]
The Local Law as it pertains to this case reads as follows:
“a. Legislative findings. It is hereby declared and found that the possession in public places, streets and parks of the city, of large knives is a menace to the public health, peace, safety and welfare of the people of the city; that the possession in public places, streets and parks of such knives has resulted in the commission of many homicides, robberies, maimings and assaults of and upon the people of the city; that this condition encourages and fosters the commission of crimes, and contributes to juvenile delinquency, youth crime and gangsterism; that unless the possession or carrying in public places, streets and parks of the city of such knives without a lawful purpose is prohibited, there is danger of an increase in crimes of violence and other conditions detrimental to public peace, safety and welfare. It is further declared and found that the wearing or carrying of knives in open view in public places while such knives are not being used for a lawful purpose is unnecessary and threatening to the public and should be prohibited.
“b. It shall be unlawful for any person to carry on his or her person or have in his or her possession, in any public place, street, or park any knife which has a blade length of four inches or more * * *
“d. The provisions of subdivisions b and c of this section shall not apply to (1) persons in the military service of the state of New York when duly authorized to carry or display knives pursuant to regulations issued by the chief of staff to the governor; (2) police officers and peace officers as defined in the criminal procedure law; (3) participants in *321 special events when authorized by the police commissioner; (4) persons in the military or other service of the United States, in pursuit of official duty authorized by federal law; or (5) any person displaying or in possession of a knife otherwise in violation of this section when such knife (a) is being used for or transported immediately to or from a place where it is used for hunting, fishing, camping, hiking, picnicing or any employment, trade or occupation customarily requiring the use of such knife; or (b) is displayed or carried by a member of a theatrical group, drill team, military or paramilitary unit or veterans organization, to, from, or during a meeting, parade or other performance or practice for such event, which customarily requires the carrying of such knife; or (c) is being transported directly to or from a place of purchase, sharpening or repair, packaged in such a manner as not to allow easy access to such knife while it is transported; or (d) is displayed or carried by a duly enrolled member of the Boy or Girl Scouts of America or a similar organization or society and such display or possession is necessary to participate in the activities of such organization or society.
“e. Violation of this section shall be an offense punishable by a fine of not more than three hundred dollars or by imprisonment not exceeding fifteen days, or by both such fine and imprisonment.
“f. Separability. If any clause, sentence, paragraph or part of this Local Law, or the application thereof to any person or circumstances shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof.”
PRESUMPTION OF CONSTITUTIONALITY
An exceedingly strong presumption of constitutionality attaches not only to enactments of the State Legislature, but to municipal ordinances as well. (Fenster v Leary, 20 NY2d 309.) While this presumption is a rebuttable one, unconstitutionality must be demonstrated by the defendant beyond a reasonable doubt. (Matter of Van Berkel v Power, 16 NY2d 37.) Only as a last resort should a court of first instance strike down a legislative enactment on constitutional grounds, and only when it has been shown that the statute is unreasonably arbitrary, and the conclusion *322 of unconstitutionality is inescapable. (Matter of Spielvogel v Ford, 1 NY2d 558, app dsmd 352 US 957; McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subd a.)
It must also be presumed by the court that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the local law, and if any state of facts known or to be assumed justifies the disputed measure, the court’s power of inquiry ends. (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11-12; Matter of Van Berkel v Power, supra.)
If a statute is vague or uncertain, the court is obliged to construe it in a manner that will avoid unconstitutional infirmities, if possible. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subd c.)
Finally, the court may not consider the constitutionality of the entirety of the statute, but must focus its attention on the specific portion applicable to the case at hand. Mr. Ortiz is accused of possession of a four-inch knife in a public street, and not in a park or public place, and therefore the scope of the court’s analysis is restricted to that provision which the defendant has asserted standing to challenge. (Parker v Levy, 417 US 733; People v Mancuso, 255 NY 463; Hauser v North British & Mercantile Ins. Co., 206 NY 455; Local Laws, 1983, No. 64, subd f, of City of New York.)
VAGUENESS
With that familiar litany of judicial restraint firmly in mind, the court will consider the question of whether the statute is void for vagueness. A prime purpose of the void for vagueness doctrine is to meet the constitutional requisite that a statute be informative on its face (People v Firth, 3 NY2d 472, 474) to ensure that citizens can conform their conduct to the dictates of the law. (People v Illardo, 48 NY2d 408, 413.) The enactment in question must be sufficiently definite to give a reasonable man subject to it notice of the nature of what is prohibited and what is required of him. (People v Byron, 17 NY2d 64, 67.) An equally important consideration is the prevention of arbitrary and discriminatory enforcement by requiring boundaries sufficiently distinct for police, Judges and juries to administer *323 the law fairly. (People v Cruz, 48 NY2d 419, app dsmd 446 US 901; Papachristou v City of Jacksonville, 405 US 156, 162.)
However, the Constitution only requires reasonable precision from the legislative draftsmen; it doesn’t impose impossible standards. Ordinary terminology may be used to express ideas that find adequate interpretation in common usage and understanding. (People v Bergerson, 17 NY2d 398.) If the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases may be put where doubt might arise. (Matter of Patricia A., 31 NY2d 83; United States v Harriss, 347 US 612; Roth v United States, 354 US 476, 491; People v Pagnotta, 25 NY2d 333.)
The defendant’s chief objection is that the statutory proscription is vague and overbroad since it includes household knives not designed for sinister purposes. He has suggested that the carving knife used at Thanksgiving dinner is one example of an innocuous object that is criminalized by the statute.
However, the citation of this single feeble example is an inadequate first step for the person seeking to overcome the heavy presumption of constitutionality. Even in the privileged sanctuary of First Amendment rights, the defendant must show that the allegedly invalid law reaches a substantial number of impermissible applications. (See New York v Berber, 458 US 747, on remand affd 57 NY2d 256; Broadrick v Oklahoma, 413 US 601.)
This the defendant cannot do, since the local law is essentially reasonable in its scope, limited by an extensive list of commonsense exceptions, and based on a valid presumption that is logically grounded in the realities of modern urban life.
PRESUMPTIONS
Presumptions and inferences are a staple of the criminal law. That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law, it is essential that there be some rational connection between the fact proved and the fact presumed, and
*324 that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. (Mobile, Jackson & Kansas City R.R. Co. v Turnipseed, 219 US 35.) This inference need only have a rational basis in life and life’s experiences. (McFarland v American Sugar Co., 241 US 79; People v Fieri, 269 NY 315, 324.) An inference or presumption is material or arbitrary, and hence unconstitutional, unless it can be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. (Leary v United States, 395 US 6.)
The presumption implicit in the local law is that four-inch knives, when carried on the streets, are being carried for criminal purposes, or for other reasons that are hazardous to the health, welfare and safety of the public.
Once possession is proven, it is incumbent upon the defendant to show that his possession of a knife was within one of the exceptions; should he fail to rebut the presumption, conviction will result. Is it rational to presume that persons carrying knives of the statutory type pose a threat to the public safety?
The court is of the opinion that the presumption is rational, based on common experience. As the City Council found in its investigative phase, and as any sentient person knows, knives are implicated in many street crimes, and continue to be a prime cause of serious injury and death. The manner in which the draftsmen undertook to define such weapons is calculated to exclude almost all objects of common household use. They have learned from the mistakes of the past. A four-inch bladed knife is a substantial cutting implement, larger than those knives commonly carried by Boy Scouts.
Of course, a perfect definition is an impossibility; what the City Council has attained is reasonable precision. If an occasional fisherman or hunter should fall victim to this local law, an affirmative defense is provided.
If such a law were enacted in a region dotted with wild life reserves, or if this were a more innocent age, perhaps it would not be reasonable. However, as a considered response to a serious and persistent urban problem, the local *325 law is valid and reasonably calculated to attain the desired goal, removal of weapons from the streets.
THE POLICE POWER
The legislative record of Local Law No. 64 of the City of New York (1983) makes mention of the recent denial of certiorari in Quilici v Village of Morton Grove (695 F2d 261, cert den_US_, 104 S Ct 194). In that celebrated case, an ordinance totally banning the possession of handguns within the borders of a village was upheld as a proper exercise of the police power, and not invalidated by the constitutional right to bear arms.
Although the Quilici court’s findings insofar as they involve the law of Illinois are inapplicable to the present case, the decision is a significant and persuasive illustration of the wide scope of the police power of a municipality as it pertains to the public safety in general and weapons regulation in particular.
In New York State, the police power is similarly deferred to by the courts, and such legislation is not struck down unless unduly oppressive and arbitrary. To cite an old example, in People ex rel. Darling v Warden of City Prison (154 App Div 413, 423), in upholding the Sullivan Law, a gun-licensing statute (former Penal Law, § 1897 [L 1909, ch 88]), the court made the following ruling: “Legislation which has for its object the promotion of the public welfare and safety falls within the scope of the police power and must be submitted to even though it imposes restraints and burdens on the individual * * * The only question that can then arise is whether the means employed are appropriate and reasonably necessary for the accomplishment of the purpose in view and are not unduly oppressive.” As long as the limitations imposed on individual conduct and on the enjoyment of property are not arbitrary, and are reasonably necessary for the common welfare, they are within the police power. (People v Bunis, 9 NY2d 1.)
For reasons already stated, the court views the local law as a rational enactment based on a valid presumption. This is not to say that its merits cannot be debated by reasonable men or women. However, if this law is unwise or ineffective, it is for the City Council, not the courts, to draft a new one. (City of New Orleans v Dukes, 427 US 297, 303.)

*326
SCIENTER

In his moving papers the defendant has placed great reliance upon that portion of the Munoz opinion that discusses criminal intent. Specifically, he has argued that a tool of everyday use cannot validly be made the object of a statutory presumption of unlawful intent. (People v Munoz, 9 NY2d 51, 59, supra, citing People v Adamkiewicz, 298 NY 176,179.) Since a four-inch knife is a tool of everyday use, it is alleged, the legislative presumption of criminal intent based on possession alone is an invalid one.
However, this analysis does not take into account the context in which the Munoz ruling was made, or the kind of changes that have taken place. When the City Council, in 1959, tried to remove from the streets all pointed or sharp objects capable of cutting or puncturing, it included an infinite variety of objects. This was a law more suited to the protection of a prisoner on suicide watch then to the needs of the public. Given the absurd scope of this definition, the Munoz court was justified in imposing a constitutional requirement that proof of criminal intent be required in connection with such objects, just as with analogous Penal Law provisions.
However, in so ruling, the court recognized that scienter, or mens rea, could, under proper circumstances, be dispensed with (9 NY2d, at pp 59-60; People v Persce, 204 NY 397, 401-402), but there had to be some reasonable relationship between the public safety, health, morals or welfare and the act prohibited. (People v Bunis, supra; Good Humor Corp. v City of New York, 290 NY 312.) In this regard, no rational person could find the presence of fountain pens and knitting needles in the public streets to be a source of alarm.
The same is not true, however, of four-inch knives. These are substantial weapons, inherently well-suited for use in the commission of crimes, and, subject to the enumerated exceptions, rarely carried on the streets for innocent purposes. (Cf. Tot v United States, 319 US 463; People v Terra, 303 NY 332, 336, app dsmd 342 US 938.)
The local law does not totally ignore the concept of criminal intent. It merely takes a negative approach to this *327 concept, by defining innocent, or noncriminal intent. The end result, for the purposes of the “innocent use” rationale of Tot and Terra, is the same.
If a scienter requirement was imposed, enforcement of this prohibition would become difficult if not impossible. In fact, to read an intent requirement into the local law — in addition to being contrary to legislative intent[3] — would render it superfluous, since the Penal Law prohibition regarding “dangerous knives” already occupies that legal ground.[4] Under these circumstances, where there was a rational connection between the prohibited act and the public safety, the City Council was justified in dispensing with a scienter requirement. (See United States v Greenbaum, 138 F2d 437; Smith v California, 361 US 147; Morissette v United States, 342 US 246; People v D'Antonio, 150 App Div 109, 113.)
DISCRIMINATORY ENFORCEMENT
In addition, Local Law No. 64 of the City of New York (1983) does not encourage arbitrary and discriminatory enforcement, nor does it provide the police with unfettered discretion. The “knife law” does nothing to abrogate the rule that probable cause for arrest is required. (See Papachristou v City of Jacksonville, 405 US 156, supra; People v Berck, 32 NY2d 567, cert den 414 US 1093.) The crime is defined by the acts committed by the defendant, not by subjective factors. (See People v Smith, 44 NY2d 613.) The local law sets forth with clarity the obligations and liabilities of persons defined therein. Concededly, the list of *328 exempted uses contained in subdivision d may cause difficulties. However, this is due to its extensively detailed nature, not to any lack of clarity. Therefore, the court finds that the local law provides adequate notice to the public and clear guidelines for adjudication. (People v Cruz, 48 NY2d 419, 428, supra and cases cited thereunder.)
LEGITIMATE OBJECTIVES
The local law promotes legitimate governmental objectives. Those objectives are set out in subdivision a of that law. (Local Laws, 1983, No. 64, subd a, of City of New York.) The New York City Council has found, for the second time, that knives play a major role in the commission of street crimes, and that they pose a threat to the public health and safety. One need not be a faithful reader of the tabloids to agree with this,finding. Nor does the defendant contest the need for knife legislation.
In this sense, Local Law No. 64 is a classic and unremarkable exercise of the police power by a municipality. It has not been shown that the enactment is anything but a rational response to a manifest evil. It is also reasonably calculated to attain the intended goal of the legislation, and is not unduly burdensome.
PREEMPTION
The court turns now to the contention that the knife law is preempted by article 265 of the Penal Law.
It is well established that the mere fact that a local law may touch upon some of the same matters treated by State law does not render the local law invalid. Rather, it is only when the State has evidenced a desire to occupy the entire field to the exclusion of local law that a municipality is powerless to act. (Wholesale Laundry Bd. of Trade v City of New York, 17 AD2d 327, affd 12 NY2d 998; People v Cook, 34 NY2d 100; People v New York Trap Rock Corp., 57 NY2d 371.)
The intent to preempt may be deduced from the enactment of a comprehensive and detailed regulatory scheme in the particular area, or from an express or implied declaration of State policy. (Wholesale Laundry Bd. of *329 Trade v City of New York, supra, p 330; Robin v Incorporated Vil. of Hempstead, 30 NY2d 347; People v De Jesus, 54 NY2d 465.)
However, silence by the State on a particular issue should not be interpreted as an expression of intent to preempt. To interpret a statute in this manner would vitiate home rule. Any time a State is silent, the likelihood exists that a local law will regulate certain activity and will prohibit something permitted elsewhere in the State. (People v Cook, supra, p 109.)
INCONSISTENCY
If the State has not preempted an area, a local enactment may be nonetheless struck down for inconsistency if the court finds either that the local law permits an act which has been specifically prohibited by State law or, conversely, prohibits an act expressly permitted by State law. (People v Cook, supra; People v Lewis, 295 NY 42.) The local law may not impose additional restrictions that impair the operation of the State’s general law. (Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99.)
However, a local law that covers the same subject matter as a State law by supplementing the general law with additional reasonable requirements is not void for inconsistency. (Robin v Incorporated Vil. of Hempstead, supra; Monroe-Livingston Sanitary Landfill v Town of Caledonia, 72 AD2d 957, 958, affd 51 NY2d 679.)
Finally, even if a local law is inconsistent with State law, it will be upheld if there is a specific local problem justifying the enactment. (Robin v Incorporated Vil. of Hempstead, supra, p 351.)
The notion that article 265 of the Penal Law, or its predecessor, preempts the field of weapons regulation has been rejected at least three times in substantially similar contexts. (People v Judiz, 38 NY2d 529 [NY City toy gun ordinance]; People v Webb, 78 Misc 2d 253 [toy guns]; Grimm v City of New York, 56 Misc 2d 525 [NY City Gun Control Law].)
The Court of Appeals decision in Judiz (supra) is determinative. The Judiz court upheld the “toy gun” law (Administrative Code of City of New York, § 436-5.0, subd g) *330 as a valid exercise of the city’s police power, against a claim of preemption by the defendant. In an analogous situation to the case at bar, the Penal Law prohibited possession of a toy gun with criminal intent (Penal Law, § 265.01, subd [2]), while the Local Law was a blanket prohibition upon possession per se. The court made the following pertinent observation: “The [State] statute’s insistence on the element of intent and its observance of constitutional limitations on presumptions flowing from possession to prove that intent (§ 265.15, subd 4) do not mean that local efforts to further control use through direct prohibition upon possession itself is precluded.” (People v Judiz, supra, p 531.) Even though the Penal Law listing of prohibited weaponry is comprehensive, and has lengthened since Judiz was decided, the weight of authority in this State is that the draftsmen of article 265 of the Penal Law did not intend to prevent municipalities from enacting reasonable supplementary legislation. (See, also, People v Lewis, 295 NY 42, supra.)
The Judiz court also brushed aside the claim of inconsistency, calling the State law a broad treatment of the subject, while labeling the city ordinance a prevention of a particular type of abuse. The inclusion of criminal intent in the State statute is not inconsistent with, nor does it prohibit a per se ban on the same weapon. (People v Judiz, supra, p 532.)
Similarly, the “knife law” does not prohibit what is specifically allowed under State law, nor does it allow what the State law specifically forbids. It merely supplements the Penal Law with additional reasonable requirements.
One may cite examples where the two statutes will overlap, such as where a person is apprehended on a public street in possession of a gravity knife with a four-inch blade. (Penal Law, § 265.01, subd [1].) However, the fact that the prosecution will often be given the choice between prosecuting as a misdemeanor (Penal Law, § 265.01) or as a violation (the local law) is not a violation of the right to due process. (People v Eboli, 34 NY2d 281; cf. People v Judiz, supra.)
*331 CONCLUSION
The local law is not unconstitutionally vague. It is a valid exercise of the police power delegated to New York City by the State Constitution and the Municipal Home Rule Law. (NY Const, art IX, § 2; Municipal Home Rule Law, § 10, subd 1, pars [i], [ii], cl a, subd [12].)
Although the wisdom of this legislation may be debatable in the literal sense, it has not been demonstrated to the court in any meaningful way that the cited flaws reach constitutional dimension. Content with pointing out certain anomalistic applications of the law, the defendant has failed to carry his heavy burden of proving unconstitutionality beyond a reasonable doubt.
In addition,, the knife legislation is not preempted by, nor is it inconsistent with, article 265 of the Penal Law. It is merely an additional layer of regulation enacted by the city as a reasonable response to a long-standing and endemic problem. This ruling is without regard to the other, severable portions of the local law.
Accordingly, the defendant’s motion to dismiss on constitutional grounds is denied in its entirety.

. The nickname is derived from the law’s effective date, Valentine’s Day, 1984.

. Subdivision c of the Local Law No. 64, which is not at issue in this case, prohibits the open display of a knife of any length in the streets, parks or other public places, subject to the same exempted uses that apply to the local law as a whole.

. Where the City Council has purposely omitted the requirement that the prosecution prove criminal intent, the court may not infer intent in order to salvage an otherwise invalid statute. (See People v Lee, 58 NY2d 491, 495; cf. United States v Harriss, 347 US 612.)

. Under the Penal Law, all knives are not treated equally. Possession of a switchblade, gravity knife or cane sword is a crime in itself. They have been made per se weapons by the State Legislature predicated upon a finding that such instruments have no legitimate purpose except as weapons, and would rarely be found in the hands of a law-abiding citizen. (Adams v New York, 192 US 585, 599, affg 176 NY 351; People v Persce, 204 NY 397; Tot v United States, 319 US 463.)
However, possession of a dagger, dirk, razor, stiletto or “dangerous knife” is criminal only if possessed with criminal intent, although such intent is presumed from the possession itself. (Penal Law, § 265.15.)
A dangerous knife is one that has been especially modified for use as a weapon (Matter of Ricci S., 34 NY2d 775) or one possessed under circumstances which demonstrate that the possessor considered it a weapon. (Matter of Jamie D., 59 NY2d 589 [suspicious behavior by defendant]; see, also, Matter of Robert T., 54 AD2d 581, mot for lv to app den 40 NY2d 807; People v Kinred, 18 AD2d 1086.)