Richard J. Kaplan, Esq. Village Attorney, Ellenville
You have requested an opinion as to whether the Village of Ellenville is preempted from enacting a local law which would prohibit persons from entering the village hall while possessing a firearm, gun or dangerous weapon of any description, including but not limited to handguns, pistols, target pistols, revolvers, rifles and shotguns.
A village is empowered to adopt local laws for the "government, protection, order, conduct, safety, health and well-being of persons or property therein" (Municipal Home Rule Law, § 10[1][ii][a][11]; see N Y Const, Art IX, § 2[c][10]; Village Law, § 4-412[1]). The power of a municipality to enact local laws which regulate the possession of firearms for the protection and safety of its inhabitants, however, must be considered in light of section 400.00(6) of the Penal Law.
Article 400 of the Penal Law prescribes the eligibility for issuance of a license to carry or possess a firearm, the procedure for obtaining such a license, and the types of licenses that may be issued. Section 265.00(3) of the Penal Law, defines "firearm" to mean "any pistol, revolver, sawed-off shotgun or other firearm of a size which may be concealed upon the person, except an antique firearm". Section 400.00(6) of the Penal Law provides:
 "Any license issued pursuant to this section shall be valid notwithstanding the provisions of any local law or ordinance. pistol or revolver, not otherwise limited as to place or time of restriction, shall be effective throughout the state, except that the same shall not be valid within the city of New York [except in certain circumstances] unless a special permit granting validity is issued by the police commissioner of that city".
A license to carry a firearm, therefore, is valid anywhere in the State notwithstanding "the provisions of any local law or ordinance". On its face, section 400.00(6) precludes a municipality from enacting a local law adding restrictions or limitations to licenses provided for in article 400. (See 1987 Op Atty Gen [Inf] 107 [village is preempted by section 400.00 of the Penal Law from requiring additional fees for a license to carry a firearm]; 1982 Op Atty Gen [Inf] 92 [county is preempted by section 400.00 of the Penal Law from passing a local law regulating the issuance, renewal, or revocation of firearm permits or establishing an advisory committee to make recommendations to the licensing officer]; 1974 Op Atty Gen [Inf] 254 [county may not enact local law requiring the applicant for a pistol license to satisfactorily complete a weapon safety course prior to the issuance of such license].)
We note that, although various provisions of article 265 of the Penal Law touch on the possession of other types of weapons (see, e.g., Penal Law, § 265.05 [prohibiting persons under the age of 16 from possessing a shotgun or rifle]), the courts have readily concluded that the Legislature has not preempted local regulation of other types of weapons. See, People v Judiz, 38 N.Y.2d 529 (1976) (upholding city ordinance prohibiting possession of imitation pistols); People v Ortiz,125 Misc.2d 318, 328-330 (Crim Ct, NYC, 1984) (upholding city ordinance banning possession of long-blade knives); Grimm v City of New York,56 Misc.2d 525 (S Ct, Queens Co, 1968) (upholding city law requiring persons to obtain permits before purchasing or possessing a rifle or shotgun).
Although section 400.00(6) of the Penal Law* prohibits the village from regulating the licensing of firearms, there is support for the position that these provisions do not preclude the village from acting in its proprietary capacity for the safety of its property and persons present thereupon. In its proprietary capacity, like any private individual, the village can prohibit persons from entering its property while possessing a firearm, even if he or she has an unrestricted license to carry the firearm.
A municipal corporation possesses two kinds of power: (1) governmental and (2) proprietary. "In the exercise of the former the corporation is a municipal government, while as to the latter it is a corporate legal individual" (County of Herkimer v Village of Herkimer, 251 App. Div. 126,128 [4th Dept, 1937]). Municipal corporations "in their private character as owners and occupiers of lands and houses, are regarded in the same light as individual owners and occupiers, and dealt with accordingly" (Bailey v Mayer, etc., of New York, 3 Hill 531, 541 [1842]).
Pursuant to its proprietary right to "make all needful rules and regulations" respecting its property (United States Constitution, Art IV, § 3), the Federal government has been held to have the right to prohibit the possession of weapons and other items in courthouses (Barrettv Kunzig, 331 F. Supp. 266 [MD Tenn, 1971]).
Barrett involved regulations promulgated by the United States General Services Administration initiating certain protective procedures in large government buildings (Barrett, supra, p 269). In issue in Barrett was the application of these regulations in a United States court-house (ibid.). Under the regulations, while on government property persons were prohibited from carrying firearms, other dangerous or deadly weapons or explosives either openly or concealed except for official purposes (Barrett, pp 269-270). Persons entering the government building were required to present their I.D. cards or have their packages inspected (Barrett, p 270). The District Court recognized the right of the government to control its property (Barrett, p 271).
 "Thus it would seem clear that the United States Government and its custodian, General Services Administration, could make use of its property as could any private citizen with his home. Hence, it could prevent entry or make such conditions as it deemed proper as a precedent to entry.
 "Once the United States had located offices and courts in its property and issued invitations for the public to enter, has it completely given up its right to protect itself, i.e., its property and employees? Stated in another way, may the government make the right of entry on its property conditional, i.e., on a casual visual inspection of packages, etc.? Reduced to an absurdity, is the United States helpless in protecting its property once it has been opened for the public use?"
The state, no less than a private property owner, has power to preserve the property under its control for its dedicated use (Adderly v Florida,385 U.S. 39, 47 [1966]).
We acknowledge that the cases cited in the previous two paragraphs do not involve preemption issues, but they demonstrate that the village, like other governmental units, has many of the same rights in their proprietary capacity as do private citizens. It follows that a village, like the Federal or State government, has power to control and preserve its property for its intended public use. Actions such as development of security procedures to safeguard persons and public property promote the public safety and welfare and help to ensure the continued use of government property for its intended purpose.
In this light, section 400.00(6) of the Penal Law may be construed to preempt municipalities only to the extent that they act in their governmental capacities. So construed, the village in its proprietary capacity can prohibit in the village hall possession of firearms by persons who have unrestricted licenses, as well as all other weapons. Such a construction serves to protect the public interest. Section 400.00(6) should not be read to preclude the village from, for example, prohibiting possession of licensed firearms in the village court where violent felons may be arraigned. Should the village decide to prohibit possession of firearms in its village hall by those who have an unrestricted permit, it should do so in its proprietary, as opposed to its governmental, capacity. It may, for example, do so by resolution as an extension of its rules dealing with the use and maintenance of municipal buildings.
We conclude that a village may in its proprietary capacity prohibit a person who has an unrestricted license to carry a firearm from entering the village hall carrying or possessing a firearm covered by the license.
* Section 139-d of the General Municipal Law authorizes a municipal corporation to enact local laws or ordinances regulating the "storage, possession and display of firearms, ammunition or explosives", but provides that "[t]he regulations provided for herein shall not apply to the personal possession, use or ownership of firearms or ammunition therefore". The provisions of this section and its legislative history (Bill Jacket, L 1968, ch 614), indicate that its purpose is to authorize local legislation regulating the handling of firearms in buildings and structures. It specifically excludes local legislation regulating personal possession of firearms. This section does not, however, preclude local rules adopted by a municipality in its proprietary capacity that deal with possession of firearms in municipal buildings.