**CITY of AKRON, Appellant and Cross–Appellee,**

v.

**RASDAN, Appellee and Cross–Appellant.**

[Cite as *Akron v. Rasdan* (1995), 105 Ohio App.3d 164.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16972.

Decided June 21, 1995.

*Charles R. Quinn,* for appellant and cross-appellee.

*Jerry G. Roubenes,* for appellee and cross-appellant.

REECE, Judge.

Appellant and cross-appellee, the city of Akron, appeals from a judgment of the Akron Municipal Court finding the knife provision in Akron Codified Ordinances ("ACO") 137.02(A) ("Akron knife provision") unconstitutional on its face. While we agree with the judgment of the municipal court and, therefore, affirm, we do not agree with the municipal court's conclusion that the Akron knife provision is unconstitutionally vague and overbroad. Rather, because the Akron knife provision criminalizes an unreasonable amount of inherently innocent activity, and because prohibiting so much innocent activity has no rational connection to protecting the public from the violent use of knives, the Akron knife provision is an unreasonable exercise of the police power in violation of substantive due process under Section 16, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

Because the municipal court declared the Akron knife provision unconstitutional on its face, no factual record was generated below. Therefore, our recitation of the facts has been culled exclusively from the summons, the complaint, and the municipal court's judgment entry. On May 3, 1994, the defendant-appellee and cross-appellant, Munir Rasdan, was stopped by an Akron police officer for an alleged traffic violation. Rasdan had a decorative knife on the floor of his car. The knife was inside a case but was not concealed. Because the knife blade

exceeded two and one-half inches in length, Rasdan was charged with carrying an oversize knife in violation of A.C.O. 137.02(A), which provides:

"No person shall carry on or about his person a pistol, *a knife having a blade two and one-half inches in length or longer*, knuckles, a billy, or other dangerous weapon. However, upon trial of this charge, the defendant shall be acquitted if it appears that he was at the time engaged in a lawful business, calling, employment, or occupation, and that the circumstances in which he was placed justified a prudent man in possessing such a weapon for the defense of his person or family." (Emphasis added.)

Rasdan moved to dismiss, claiming that the Akron knife provision was unconstitutionally vague and overbroad. The municipal court agreed and dismissed the charge. The city of Akron appeals, raising one assignment of error.

## I. STANDARD AND SCOPE OF REVIEW

A fundamental principle of constitutional law is that if one provision in a statute is found to be unconstitutional, the remaining provisions are not affected by that determination unless those provisions are "essentially and inseparably connected in substance" to the unconstitutional part. *State v. McCallion* (1992), 78 Ohio App.3d 709, 715, 605 N.E.2d 1289, 1293. Upon review of A.C.O. 137.02(A), we find that the knife provision is not essentially and inseparably connected in substance to the other weapons provisions in the ordinance. Therefore, because Rasdan was charged with violating the knife provision in A.C.O. 137.02(A), and because that provision is severable from the other weapons provisions, our review is limited to the constitutionality of the knife provision, and we express no opinion as to the constitutionality of the other weapons provisions in the ordinance.

Accordingly, our review is limited to examining the following language from A.C.O. 137.02(A): "No person shall carry on or about his person * * * a knife having a blade two and one-half inches in length or longer." In reviewing this language, we must remain mindful that a strong presumption of constitutionality attaches to all legislative enactments and a reviewing court must construe every legislative enactment to sustain its constitutionality if at all possible. *State v. Collier* (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552, 553–554. Furthermore, to overcome the presumption of constitutionality, a party challenging a legislative enactment must prove its unconstitutionality beyond a reasonable doubt. *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226–1227. With these standards in mind, we turn to the merits of the city's appeal.

## II. SUBSTANTIVE DUE PROCESS

In *Bowers v. Hardwick* (1986), 478 U.S. 186, 190–193, 106 S.Ct. 2841, 2843–2846, 92 L.Ed.2d 140, 146, the United States Supreme Court stated that "despite the language of the Due Process Clauses of the Fifth and Fourteenth Amendments, which appears to focus only on the processes by which life, liberty, or property is taken, the cases are legion in which those Clauses have been interpreted to have substantive content, subsuming rights that to a great extent are immune from federal or state regulation or proscription." Because the phrase "due course of law" in Section 16, Article I of the Ohio Constitution is "parallel in meaning to the 'due process of law' phrase as employed in the Fourteenth Amendment to the United States Constitution," the Ohio Constitution likewise affords an individual substantive due process rights. *Columbus v. New* (1982), 1 Ohio St.3d 221, 223, 1 OBR 244, 245–246, 438 N.E.2d 1155, 1156–1157, fn. 2.

In the realm of criminal legislation, substantive due process places limitations on the manner and extent to which an individual's conduct may be defined as criminal in the substantive law. 1 LaFave & Scott, Substantive Criminal Law (1986) 208, Section 2.12. The void-for-vagueness doctrine and the overbreadth doctrine are just two of several doctrines that are used by the courts to delineate the substantive boundaries outside of which the legislature may not constitutionally exercise the police power. *Id.* at 208–209. Since the trial court relied upon vagueness and overbreadth to invalidate the Akron knife provision, our review begins with those two doctrines.

### A. Vagueness

■ In order to establish that a criminal statute is void for vagueness, the challenging party must show that, upon examining the statute, a person of ordinary intelligence would not understand what conduct is prohibited by the law. *Collier*, 62 Ohio St.3d at 269, 581 N.E.2d at 553–554; *Kolender v. Lawson* (1983), 461 U.S. 352, 357–358, 103 S.Ct. 1855, 1858–1859, 75 L.Ed.2d 903, 909. Thus, in order to prove that the Akron knife provision is unconstitutionally vague, Rasdan needed to show beyond a reasonable doubt that the language in the knife provision is "so unclear that he could not reasonably understand that it prohibited the acts in which he engaged." *Collier*, 62 Ohio St.3d at 269, 581 N.E.2d at 554.

■ Although the test for vagueness is stated in simple and succinct terms, proper constitutional analysis requires a reviewing court to scrutinize the challenged statutory language in light of the three fundamental values that are at the core of the void-for-vagueness doctrine. *State v. Tanner* (1984), 15 Ohio St.3d 1, 3, 15 OBR 1, 2–3, 472 N.E.2d 689, 690–691. As set forth in *Tanner*, "[t]hese values are first, to provide fair warning to the ordinary citizen so behavior may

comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited." *Id.*

Under the first value in the void-for-vagueness inquiry, we must determine whether the challenged statutory language provides the average person with adequate notice and fair warning as to the standard of conduct required by the law. The Akron knife provision is a general prohibition: "No person shall carry on or about his person * * * a knife having a blade two and one-half inches in length or longer." This language is clear and unambiguous, and the average person would have little doubt as to its meaning and the conduct which is prohibited. The single exception to the knife prohibition is equally clear and comprehensible. The exception contains two conditions: (1) that the defendant was at the time engaged in a lawful business, calling, employment, or occupation; and (2) that the circumstances in which the defendant was placed justified a prudent man in carrying the knife for the defense of his person or family. Although the two conditions ultimately involve factual determinations, those factual determinations are based on commonly recognized and comprehensible normative standards; since those normative standards are grounded in everyday experience, a person of ordinary intelligence would be able to understand the nature of the exception and could readily conform his conduct to the dictates of the ordinance.

Under the second value in the void-for-vagueness inquiry, we must determine whether the challenged statutory language provides sufficiently explicit standards for those charged with enforcing the law. Specifically, the statutory language must "define the criminal offense * * * in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858, 75 L.Ed.2d at 909. Unlike some loitering and vagrancy laws, the prohibitory language in the Akron knife provision is not subject to varying interpretations or rife with undefined and imprecise words and phrases. Compare *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 618 N.E.2d 138. On the contrary, the prohibitory language in the knife provision is explicit and precise, and law enforcement personnel and the courts are afforded little discretion to define what conduct constitutes a violation of the ordinance. Although we recognize that inconsistent enforcement by officials is a possibility with any law, the knife provision *on its face* does not encourage inconsistent enforcement or grant unfettered discretion to law enforcement personnel to define the prohibited conduct. In the absence of such facial infirmities, the knife provision provides constitutionally sufficient standards for those charged with enforcing the ordi-

nance. See *Tanner*, 15 Ohio St.3d at 4, 15 OBR at 4, 472 N.E.2d at 692; *Collier*, 62 Ohio St.3d at 272, 581 N.E.2d at 555–556.

Under the third and final value in the void-for-vagueness inquiry, we must determine whether the challenged statutory language unreasonably impinges upon or inhibits fundamental constitutionally protected freedoms. Specifically, we must determine whether the challenged language so encroaches upon a fundamental constitutional right that an ordinary person, upon reading the statute, could not reasonably understand where his constitutional right ends and the prohibition begins. As stated in the First Amendment context, such vagueness leads citizens to " 'steer far wider of the unlawful zone' * * * than if the boundaries of the forbidden areas were clearly marked." *Grayned v. Rockford* (1972), 408 U.S. 104, 109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 228, quoting *Baggett v. Bullitt* (1964), 377 U.S. 360, 372, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377, 385.

In this case, Rasdan contends that the Akron knife provision unreasonably impinges upon his constitutional right to bear arms. In *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 43, 616 N.E.2d 163, 169–170, the Ohio Supreme Court held that Section 4, Article I of the Ohio Constitution grants an Ohio citizen a fundamental right to bear arms that is broader than the right to bear arms found in the Second Amendment to the United States Constitution. However, the constitutional right to bear arms in Ohio is not absolute and is subject to reasonable regulation. *Id.* at 46–48, 616 N.E.2d at 171–173. In reviewing the reasonableness of regulation of that right, a court must defer to the judgment of the legislative body because local authorities are presumed to be familiar with local conditions and to know the needs of the community. Thus, a reviewing court may not pass judgment on the wisdom of the legislation or substitute its judgment for that of the legislative body unless there is a "clear and palpable abuse of power." *Id.* at 48, 616 N.E.2d at 172. Having reviewed the Akron knife provision in light of Ohio's constitutional right to bear arms, we find no such abuse of power.

Section 4, Article I creates a fundamental right to bear arms for "defense and security." The city of Akron properly considered this fundamental right by including in A.C.O. 137.02(A) an exception from criminal liability when a person is "engaged in a lawful business, calling, employment, or occupation" and the circumstances justify "a prudent man in possessing such a weapon for the *defense of his person or family.*" (Emphasis added.) Even though the defense exception in A.C.O. 137.02(A) is not absolute, we do not find the limitations in the exception to be unreasonable or arbitrary. Thus, because A.C.O. 137.02(A) contains an exception for "defense of * * * person or family," the ordinance does not

unreasonably impinge upon a person's right to bear arms for "defense and security" under Section 4, Article I of the Ohio Constitution.[1]

Having carefully scrutinized the Akron knife provision in light of the three fundamental values of the void-for-vagueness doctrine, we conclude that the Akron knife provision is not unconstitutionally vague.

### B. Overbreadth

██ As to application of the overbreadth doctrine, the Ohio Supreme Court has stated that "it is generally well recognized that the overbreadth doctrine has limited application, and 'outside the limited First Amendment context, a criminal statute may not be attacked as overbroad.'" *Collier*, 62 Ohio St.3d at 272, 581 N.E.2d at 555, quoting *Schall v. Martin* (1984), 467 U.S. 253, 268, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207, 220, fn. 18. Because the Akron knife provision does not implicate any First Amendment rights, the overbreadth doctrine has no application in this case.

In so holding, we note that under limited circumstances the United States Supreme Court has used an overbreadth analysis in non-First-Amendment cases. See, *e.g., Eisenstadt v. Baird* (1972), 405 U.S. 438, 450–452, 92 S.Ct. 1029, 1036–1038, 31 L.Ed.2d 349, 361 (contraceptive restrictions and the Equal Protection Clause); *Griswold v. Connecticut* (1965), 381 U.S. 479, 485–486, 85 S.Ct. 1678, 1682–1683, 14 L.Ed.2d 510, 516 (contraceptive restrictions and the right to privacy). Because the circumstances found in those cases are not present in this appeal, a traditional overbreadth analysis is not appropriate.

Moreover, because the term "overbroad" has assumed a precise, technical, and legal meaning within the context of the First Amendment, we are reluctant to use the term outside of that specific context. See *Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 497, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362, 370–371, fn. 9. Thus, while we find in the next section of the opinion that the Akron knife provision is unreasonable in its scope, we do not find it to be overbroad as that term is traditionally used.

### C. Rational Basis Test

██ To withstand basic substantive due process scrutiny, a statutory prohibition must be rationally related to a legitimate governmental purpose.

---

1. Our holding with regard to the defense exception in A.C.O. 137.02(A) is not intended to establish a blanket requirement that all statutory prohibitions implicating the right to bear arms must include a similar defense exception. Because A.C.O. 137.02(A) contains such an exception, our inquiry does not need to go any further. However, without such an exception, A.C.O. 137.02(A) would not be *per se* violative of Section 4, Article I. Rather, the ordinance still could be upheld under Section 4, Article I, even without a defense exception, so long as it did not unreasonably restrict the right to bear arms. Compare *Arnold* and *Cincinnati v. Langan* (1994), 94 Ohio App.3d 22, 640 N.E.2d 200.

*State v. Runnels* (1989), 56 Ohio App.3d 120, 122–123, 565 N.E.2d 610, 614–615. However, if a statutory prohibition impinges upon a fundamental constitutional right, the statute must pass strict scrutiny, *i.e.*, the law must be necessary to promote a compelling governmental interest. We have already determined that the Akron knife provision does not impinge upon any fundamental constitutional rights, including the right to bear arms; therefore, the rational basis test is the appropriate standard of review. But, see, *Arnold,* 67 Ohio St.3d at 53, 616 N.E.2d at 176 (Hoffman, J., concurring in part and dissenting in part).

Under the rational basis test, a statutory prohibition is constitutionally valid if it bears a real and substantial relationship to the public's health, safety, morals, or general welfare *and* is not unreasonable or arbitrary. *State v. Benson* (1992), 81 Ohio App.3d 697, 701, 612 N.E.2d 337, 339–340. The ultimate objective of the Akron knife provision is to protect the public from the violent use of knives. In this regard, the knife provision bears a real and substantial relationship to the public safety. However, because the city of Akron has criminalized so much inherently innocent, harmless, and useful conduct in achieving this legitimate goal, the Akron knife provision is unreasonable in its scope and cannot be rationally harmonized with the purpose of the legislation.

As a general rule, "[r]egulation of items that have some lawful as well as unlawful uses is not an irrational means of discouraging [criminal behavior]." *Hoffman Estates,* 455 U.S. at 497, 102 S.Ct. at 1192, 71 L.Ed.2d at 371, fn. 9. Nevertheless, while regulation of such items is not *per se* irrational, the legislature must still stay within constitutional bounds when enacting a blanket prohibition. In this regard, the highest courts of several jurisdictions have determined that a blanket prohibition on the use or possession of an item that has some lawful as well as unlawful uses violates substantive due process if the prohibition is "too sweeping in encompassing activity which is wholly innocent." LaFave, *supra,* at 218. See, *e.g., State v. Saiez* (Fla.1986), 489 So.2d 1125, 1128–1129; *People v. Munoz* (N.Y.1961), 9 N.Y.2d 51, 59–61, 211 N.Y.S.2d 146, 152–153, 172 N.E.2d 535, 540.

The Akron knife provision clearly encompasses within its scope of criminal liability an *unreasonable* amount of activity that is inherently innocent, harmless, and useful. The most obvious examples of this type of innocent activity include carving, hunting, fishing, camping, scouting, and other recreational activities in which carrying a knife is an integral and often essential part of the activity. As additionally noted by the municipal court, persons carrying "common kitchen knives" or "bringing their antique knives or swords to shows and displays violate this statute" and "[t]he sword juggling clown could be arrested for entertaining children." Indeed, *every* person carrying a pocketknife or penknife in the city of Akron may violate the criminal proscription in A.C.O. 137.02(A). While the city

of Akron may not have intended to prohibit so much innocent activity, the knife provision, as written, has that effect. Since prohibiting so much innocent activity has no rational connection to protecting the public from the violent use of knives, the Akron knife provision is an unreasonable exercise of the police power and unconstitutional on its face.

In reaching this conclusion, we emphasize that the Akron knife provision is unconstitutional because it encompasses an *unreasonable* amount of innocent activity. Similar knife provisions in New York City and the city of Seattle have withstood constitutional scrutiny; however, those provisions, while ultimately encompassing some innocent activity, have included a sufficient number of exceptions to criminal liability that they have been found to be reasonable exercises of the police power. *Seattle v. Riggins* (1991), 63 Wash.App. 313, 320–322, 818 P.2d 1100, 1104; *People v. Ortiz* (N.Y.Crim.Ct.1984), 125 Misc.2d 318, 323–324, 479 N.Y.S.2d 613, 619. The Akron knife provision contains only one limited exception, the defense exception discussed previously. By not including other exceptions in the knife provision, the city of Akron has criminalized an unreasonable amount of innocent activity and, consequently, has made the knife provision unreasonable in its scope. See *Ortiz*, 125 Misc.2d at 323–324, 479 N.Y.S.2d at 619.

In lieu of enumerating specific exceptions to criminal liability, the city of Akron alternatively could have included an element of criminal intent in the knife provision to reasonably define its scope. The Akron knife provision is a strict liability ordinance, *i.e.*, no *mens rea* or criminal intent is necessary to support a conviction under the ordinance. In *Smith v. California* (1959), 361 U.S. 147, 149–150, 80 S.Ct. 215, 216–217, 4 L.Ed.2d 205, 209, the United States Supreme Court stated:

" 'The existence of a mens rea is a rule of, rather than an exception to, the principles of Anglo–American criminal jurisprudence.' Still, it is doubtless competent for the States to create strict criminal liabilities by defining criminal offenses without any element of scienter—though even where no freedom-of-expression question is involved, there is precedent in this Court that this power is not without limitations. See *Lambert v. California* [ (1957), 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228]." (Citation omitted.)

Based on *Lambert* and other Supreme Court precedent addressing strict liability crimes, the United States Sixth Circuit Court of Appeals has determined that "where an offense is defined without a formal element of intent, and where the offense involves conduct for which one would not ordinarily be blamed, the [Supreme] Court might well find that a defendant could not be convicted of the offense without violating the Due Process Clause." *Stanley v. Turner* (C.A.6, 1993), 6 F.3d 399, 404. From this determination, the Sixth Circuit has concluded

that "where a criminal statute prohibits and punishes seemingly innocent or innocuous conduct that does not in itself furnish grounds to allow the presumption that defendant knew his actions must be wrongful, conviction without some other, extraneous proof of blameworthiness or culpable mental state is forbidden by the Due Process Clause." (Footnote omitted.) *Id.* See, also, LaFave, *supra,* at 218–221.

The Akron knife provision clearly prohibits a substantial amount of inherently innocent activity, yet the knife provision does not contain an element of criminal intent or, in the alternative, a sufficient number of exceptions to reasonably define its scope. Since prohibiting so much innocent activity has no rational connection to protecting the public from the violent use of knives, the Akron knife provision is an unreasonable exercise of the police power and unconstitutional on its face. The city's assignment of error is overruled.

## III. CONFLICT WITH THE GENERAL LAWS OF THE STATE

Pursuant to App.R. 3(C)(2), Rasdan claims in a cross-assignment of error that the Akron knife provision is unconstitutional under Section 3, Article XVIII of the Ohio Constitution because it is in direct conflict with the general laws of the state, specifically R.C. 2923.12. Because we have already determined that the Akron knife provision is unconstitutional under substantive due process review, Rasdan's cross-assignment of error is rendered moot. App.R. 12(A)(1)(c).

## IV. CONCLUSION

Based on the foregoing, we find that the knife provision in Akron Codified Ordinance 137.02(A) is unconstitutional on its face because it is an unreasonable exercise of the police power in violation of substantive due process. The city's assignment of error is overruled, Rasdan's cross-assignment of error is rendered moot, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and SLABY, J., concur.